918 A.2d 595

TOLL BROTHERS, INC., A DELAWARE CORPORATION, PLAINTIFF, v. TOWNSHIP OF WEST WINDSOR, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, LOCATED IN MERCER COUNTY, MAYOR AND COUNCIL OF THE TOWNSHIP OF WEST WINDSOR, AND THE PLANNING BOARD OF THE TOWNSHIP OF WEST WINDSOR, DEFENDANTS–RESPONDENTS.

AFFORDABLE LIVING CORPORATION, INC., A NEW JERSEY CORPORATION, PLAINTIFF, AND MANEELY, INC., INTERVENOR, AND DR. AND MRS. CHARLES AKSELRAD, INTERVENORS–APPELLANTS, v. WEST WINDSOR TOWNSHIP, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, LOCATED IN MERCER COUNTY, NEW JERSEY, DEFENDANT–RESPONDENT.

Argued January 30, 2007—Decided April 3, 2007.

*Paul A. Sandars, III,* argued the cause for intervenors-appellants (*Lum, Danzis, Drasco & Positan,* attorneys; *Mr. Sandars* and *Kevin J. O'Connor,* on the briefs).

*Karen L. Cayci* and *Gerald J. Muller,* argued the cause for respondents (*Herbert, Van Ness, Cayci & Goodell,* attorneys for Township of West Windsor and Mayor and Council of the Township of West Windsor and *Miller, Porter & Muller,* attorneys for The Planning Board of the Township of West Windsor).

Justice LaVECCHIA delivered the opinion of the Court.

This appeal involves a post-settlement application filed by Dr. and Mrs. Charles Akselrad seeking sanctions pursuant to the Frivolous Litigation Statute, *N.J.S.A.* 2A:15–59.1. *Rule* 1:4–8 governs the procedures applicable to an award of frivolous litigation counsel fees and costs. In this case, because the sanction application was filed against a party rather than an attorney, subsection (f) of that *Rule* is implicated. Subsection (f) states that, "[t]o the extent practicable," the procedures governing applications for frivolous litigation sanctions against attorneys and pro se parties shall apply also to applications against parties.

In an unpublished opinion, the Appellate Division dismissed the Akselrads' application for failure to comply with *Rule* 1:4–8's requirements. Specifically, the panel faulted the Akselrads for not providing their adversary with notice of the specific conduct that allegedly violated the *Rule,* accompanied by a written demand to cease the offending conduct. *See R.* 1:4–8(b)(1) (the "safe harbor" provision). The Akselrads contend that although the Court, through its rules, can impose a safe harbor requirement in respect of claims advanced against attorneys and pro se litigants, the Court lacks authority to require that *Rule* 1:4–8's safe harbor provision be applied to statutory frivolous litigation claims asserted against a party. Essentially, they argue that because the statute does not contain any such requirement, the Court may not condition a litigant's statutory claim against an adversary on

compliance with the *Rule's* notice-and-demand-to-cease procedure. We find that argument to be meritless.

■ The Court's plenary authority to promulgate rules governing "the practice and procedure" in all courts of this State, *N.J. Const.,* art. VI, § 2, ¶ 3, allows for the imposition of procedural requirements that are not inconsistent with either the plain language or the policies underlying the Frivolous Litigation Statute. *Rule* 1:4–8 as amended established sanction procedures that further the policies underlying the Frivolous Litigation Statute, to wit, deterrence of frivolous litigation and compensation for those having to suffer the consequences of frivolous litigation behavior. Therefore, requiring all sanction applicants to comply with the *Rule's* minimal procedural requirements will result in promoting the purposes of the legislative scheme.

That said, the *Rule* states that a party seeking sanctions against another party must comply with its procedural requirements only "[t]o the extent practicable." *R.* 1:4–8(f). The Appellate Division's decision does not reveal whether the panel considered that caveat. Dismissal of the application on the basis of a procedural deficiency should be conditioned on a consideration of whether it was practicable to comply with *Rule* 1:4–8. Therefore, we are constrained to reverse and remand.

## I.

The motion for counsel fees and costs at issue in this matter was a byproduct of a protracted dispute between the Akselrads and the Township of West Windsor (Township) over the zoning and development of property in the Township owned by the Akselrads. Recitation of the complex procedural history of the underlying litigation is not necessary to our resolution of this matter. It suffices to note that the parties entered into a settlement agreement in late 2004. In January 2005, the trial court memorialized the settlement agreement in an order granting the Akselrads' motion to dismiss.

Shortly after the settlement had been finalized, the Akselrads filed a motion for counsel fees and costs pursuant to *N.J.S.A.* 2A:15–59.1. In their motion papers they claimed that the Township had acted in bad faith during the litigation by consistently asserting that the Akselrads' property could not be sewered at a reasonable cost. Importantly, the Akselrads did not file a certification verifying that they had served the Township with a written notice of the conduct alleged to be a violation and demand to cease as required by *Rule* 1:4–8(b)(1). The Township opposed the Akselrads' motion, and filed a cross-motion for counsel fees and costs incurred in defending the Akselrads' motion.

The trial court denied both parties' motions. The court denied the Akselrads' motion for counsel fees and costs, finding that the Township was immune from frivolous litigation sanctions. Relying on *Division of Youth & Family Services v. P.M.*, 301 *N.J.Super.* 80, 693 *A.*2d 941 (Ch.Div.1997), the court reasoned that public entities like the Township cannot be "nonprevailing person[s]" under *N.J.S.A.* 2A:15–59.1 and therefore cannot have counsel fees and costs awarded against them. The court summarily denied the Township's cross-motion for sanctions and advised the parties to put their differences to rest.

The Akselrads appealed, and the Appellate Division affirmed the trial court's judgment in an unpublished opinion. Rather than addressing whether a public entity is immune from frivolous litigation sanctions under *N.J.S.A.* 2A:15–59.1, the panel held instead that pursuant to *Rule* 1:4–8(f) a motion for counsel fees and costs under *N.J.S.A.* 2A:15–59.1 must comply with the procedural requirements prescribed by *Rule* 1:4–8(b). Because the Akselrads had not served a written notice and demand on the Township prior to filing the motion for fees and costs, *see R.* 1:4–8(b)(1), the panel found that the Akselrads were procedurally barred from seeking frivolous litigation sanctions against the Township. In reaching that conclusion the panel did not address whether it would have been "practicable" for the Akselrads to

comply with the safe harbor requirement of *Rule* 1:4–8(b)(1). *See R.* 1:4–8(f).

We granted the Akselrads' petition for certification. 188 *N.J.* 490, 909 *A.2d* 725 (2006).

## II.

### A.

In 1988, the New Jersey Legislature enacted the Frivolous Litigation Statute, *N.J.S.A.* 2A:15–59.1. *L.* 1988, *c.* 46, § 1; *see also* Maureen E. Garde, *New Jersey's Frivolous Claims Statute— Taking a Closer Look,* 23 *Seton Hall L.Rev.* 153, 157–83 (1992) (examining origins and legislative history of *N.J.S.A.* 2A:15–59.1). Since its enactment, the statute has been recognized as serving a dual purpose. *See Deutch & Shur, P.C. v. Roth,* 284 *N.J.Super.* 133, 141, 663 *A.2d* 1373 (Law Div.1995). On the one hand, "the statute serves a punitive purpose, seeking to deter frivolous litigation." *Ibid.* On the other hand, the statute serves a compensatory purpose, seeking to reimburse "the party that has been victimized by the party bringing the frivolous litigation." *Ibid.*

The statute permits a court to award reasonable counsel fees and litigation costs to a prevailing party in a civil action if the court determines "that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous." *N.J.S.A.* 2A:15–59.1(a)(1). A complaint, counterclaim, cross-claim, or defense is deemed frivolous if it was "commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury," *N.J.S.A.* 2A:15–59.1(b)(1), or if "[t]he nonprevailing party knew, or should have known, that the complaint, counterclaim, cross-claim or defense was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law," *N.J.S.A.* 2A:15–59.1(b)(2).

In *McKeown–Brand v. Trump Castle Hotel & Casino,* 132 *N.J.* 546, 626 *A.2d* 425 (1993), this Court addressed a separation of

powers challenge to the validity of *N.J.S.A.* 2A:15–59.1. Although we determined that *N.J.S.A.* 2A:15–59.1 did not encroach on the Court's constitutional authority to regulate practice and procedure in the courts, we did find that the statute infringed on the Court's exclusive power to regulate attorneys. *Id.* at 554–58, 626 *A.2d* 425. We held, therefore, that pursuant to *N.J.S.A.* 2A:15–59.1 a prevailing party may move for sanctions against a *party* who has filed a frivolous pleading, but may not seek sanctions against that party's attorney. *Id.* at 560, 626 *A.2d* 425. Nevertheless, the Supreme Court's Committee on Civil Practice was directed to "consider the circumstances in which courts may impose counsel fees and costs on attorneys who engage in frivolous litigation" because the *McKeown–Brand* Court shared the Legislature's concern about "the cost that baseless litigation imposes on litigants, the courts, and the public." *Id.* at 562–63, 626 *A.2d* 425.

As a result of the *McKeown–Brand* decision, *Rule* 1:4–8 was amended. Prior to 1996, the *Rule* did not authorize an award of sanctions against an attorney. *See R.* 1:4–8 (1996). In September 1996, the Court adopted a new version patterned on its federal counterpart, *Federal Rule of Civil Procedure* 11. Pressler, *Current N.J. Court Rules,* comment 1 on *R.* 1:4–8 (2007). The revised *Rule* 1:4–8 provides that the signature of an attorney or pro se party on a "pleading, written motion, or other paper" certifies that

to the best of his or her knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) the paper is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the factual allegations have evidentiary support or, as to specifically identified allegations, they are either likely to have evidentiary support or they will be withdrawn or corrected if reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support; and

(4) the denials of factual allegations are warranted on the evidence or, as to specifically identified denials, they are reasonably based on a lack of information or belief or they will be withdrawn or corrected if a reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support.

[*R.* 1:4–8(a).]

Subsection (b) of *Rule* 1:4–8 prescribes the procedure for seeking sanctions against an attorney or pro se party who files a frivolous "pleading, written motion, or other paper." A litigant seeking sanctions under the *Rule* must file a separate motion describing the specific conduct alleged to be a violation of the *Rule. R.* 1:4–8(b)(1). Prior to filing that motion, however, the aggrieved litigant must provide the attorney or pro se party with a procedural "safe harbor." *See ibid.* The litigant is required to serve a written notice and demand on the attorney or pro se party, which must include a request that the allegedly frivolous paper be withdrawn. *Ibid.* The written notice and demand serves as a warning that the litigant will apply for sanctions "if the offending paper is not withdrawn within 28 days of service of the written demand." *Ibid.* A motion for counsel fees and costs must include a certification that the litigant seeking sanctions has served the written notice and demand on the attorney or pro se party. *Ibid.*

Subsection (f) of *Rule* 1:4–8, titled "Applicability to Parties," provides that "[t]o the extent practicable, the procedures prescribed by this rule shall apply to the assertion of costs and fees against a party other than a pro se party pursuant to *N.J.S.A.* 2A:15–59.1." Thus, a litigant moving for counsel fees and costs pursuant to *N.J.S.A.* 2A:15–59.1 is required to comply with *Rule* 1:4–8(b)(1)'s safe harbor provision, but only "[t]o the extent practicable." *R.* 1:4–8(f).

B.

The few published opinions interpreting the interplay between *Rule* 1:4–8 and *N.J.S.A.* 2A:15–59.1 have not addressed *Rule* 1:4–8(f)'s requirement that the *Rule's* procedures apply to a motion for a frivolous litigation sanction against a party only "[t]o the extent practicable." For example, in *Czura v. Siegel,* 296 *N.J.Super.* 187, 189, 686 *A.*2d 390 (App.Div.1997), involving a statutory application by a prevailing party in a defamation action, the Appellate Division simply commented that *Rule* 1:4–8 "prescribes the current

motion procedure applicable to fee applications under [*N.J.S.A.* 2A:15–59.1]." The court denied that application, however, on the basis that it had been filed after entry of the final judgment and not within the ten days thereafter by way of a motion to alter or amend the judgment. *Id.* at 189–90, 686 *A.*2d 390.

Similarly, in *Trocki Plastic Surgery Center v. Bartkowski,* 344 *N.J.Super.* 399, 405, 782 *A.*2d 447 (App.Div.2001), *certif. denied,* 171 *N.J.* 338, 793 *A.*2d 716 (2002), the Appellate Division, in reversing an untimely frivolous litigation award, summarily stated that *Rule* 1:4–8 "governs the procedure for fee applications both against parties under [*N.J.S.A.* 2A:15–59.1] and against lawyers under [*Rule* 1:4–8]." The panel also commented that the application should have been denied for movant's failure to comply with the safe harbor provision, but did not comment further on the "to the extent practicable" language. *Id.* at 406, 782 *A.*2d 447.

More recently, in *Community Hospital Group, Inc. v. Blume Goldfaden Berkowitz Donnelly Fried & Forte, P.C.,* 381 *N.J.Super.* 119, 127–28, 885 *A.*2d 18 (App.Div.2005), *certif. denied and remanded on other grounds,* 187 *N.J.* 489, 901 *A.*2d 952 (2006), the Appellate Division assumed that the defendants, who were seeking frivolous litigation sanctions pursuant to *N.J.S.A.* 2A:15–59.1, were required to comply with the safe harbor provision of *Rule* 1:4–8(b)(1). The plaintiff in that case filed a lawsuit against the defendants to enjoin them from disclosing confidential medical records. *Id.* at 122, 885 *A.*2d 18. The defendants filed an answer and counterclaim, seeking counsel fees and costs pursuant to *N.J.S.A.* 2A:15–59.1. *Ibid.* The trial court dismissed the complaint because the plaintiff lacked standing to seek the injunction. *Ibid.* The trial court also denied the defendants' claim for sanctions, concluding that the plaintiff's complaint was not frivolous. *Id.* at 126–27, 885 *A.*2d 18.

In affirming the trial court's denial of the defendants' application for sanctions, the Appellate Division first noted the lack of evidence that the defendants had ever "complied with the notice requirements of *Rule* 1:4–8(b)(1)." *Id.* at 127–28, 885 *A.*2d 18.

Notwithstanding, the panel determined that the plaintiff's complaint was not filed in bad faith, and also rejected the argument that the plaintiff's continued maintenance of the lawsuit constituted a violation of *N.J.S.A.* 2A:15–59.1. *Id.* at 128–29, 885 *A.2d* 18. In respect of the "continued maintenance of the litigation" argument in support of the frivolous litigation sanction, the panel indicated that the obligation to give notice was not to be avoided, commenting that "[i]f that [were] so, demand should have been made [at the point when continued maintenance of the lawsuit became frivolous] with an explanation conforming to the requirements of *Rule* 1:4–8(b)(1)." *Id.* at 129, 885 *A.2d* 18. The latter comment appears to recognize that the practicality requirement in subsection (f) of the *Rule* requires a fact-sensitive analysis.

## III.

With the amendment of *Rule* 1:4–8, the Court followed through on its commitment to address frivolous litigation. Through enactment of the revised *Rule*, the Court exercised its authority over the practice of law and procedures in the courts in two respects. *See N.J. Const.,* art. VI, § 2, ¶ 3; *State v. J.M.,* 182 *N.J.* 402, 415, 866 *A.2d* 178 (2005). First, *Rule* 1:4–8 was amended to add a mechanism by which frivolous litigation sanctions could be obtained against an attorney. That required a rule amendment because in *McKeown–Brand, supra,* the Court declared that it was beyond the power of the Legislature to authorize such a sanction. 132 *N.J.* at 549, 626 *A.2d* 425. Second, consistent with the Court's authority over procedure in the courts and in furtherance of the dual interests underlying the Legislature's enactment of *N.J.S.A.* 2A:15–59.1—deterrence and compensation—the Court channeled the process by which applicants could initiate sanction applications before the courts. We fashioned timeframes for bringing frivolous behavior to the attention of the offending party, counsel, or pro se litigant, so that the behavior could be corrected promptly and litigation costs kept to a minimum, thereby preserving judicial, lawyers', and litigants' resources.

Thus, *Rule* 1:4–8, with its safe harbor provision, advances the policy interests of deterrence and reparations that animate the Frivolous Litigation Statute. *See Deutch & Shur, supra,* 284 *N.J.Super.* at 141, 663 *A.*2d 1373. By making the safe harbor provision of the *Rule* apply to lawyers and parties alike, all users of the judicial system are spurred to give prompt warning to those engaged in frivolous litigation activity. Early notice furthers the legislative purposes by providing all opportunity for remediation. Noncompliance places the applicant at risk of forfeiting recompense for defending against allegedly frivolous litigation conduct for which the offending person was not put on notice. The *Rule* thus does not thwart the legislative policy against frivolous litigation conduct but enhances it.

That said, the *Rule* requires a court that hears an application against a party to assess whether it is practicable under all the circumstances to require strict adherence to the requirements of *Rule* 1:4–8. The most fact-sensitive aspect of such an inquiry undoubtedly will involve compliance with the safe harbor requirement that is designed to bring an early stop to offending behavior. Although the notice requirement may have a limiting impact on the compensation that one may receive for costs and fees, the public policies underlying *N.J.S.A.* 2A:15–59.1 militate in favor of requiring that claims against parties meet the *Rule's* procedural requirements to the fullest extent possible. By insisting on compliance as soon as practicable, the salutary benefits of adhering to the notice requirement will more promptly rid the judicial forum of frivolous litigation behavior and will concomitantly provide reimbursement for the fees and costs actually attributable to an adversary's uncorrected offending conduct.

We anticipate that by requiring an applicant seeking an award against a party to explain what made timely compliance impracticable, courts may not be able to summarily dismiss such applications when genuine factual disputes are present. Technical noncompliance with the *Rule* nonetheless demands that a practicability assessment be made. If a court determines that compliance

could have occurred earlier, the sanction should be reduced concomitantly. Counsel fees and costs should be calculated from the point when compliance was practicable. If the court determines that compliance was practicable from the time ordinarily required under the *Rule,* relief may be denied in its entirety.

■ To summarize, a court should not dismiss an application governed by subsection (f) without making an assessment about the practicability of compliance. Because no such determination was made in respect of the Akselrads' application, dismissal of the application was premature. Therefore, we reverse the Appellate Division judgment and remand for the court to engage in that assessment, assuming the panel determines that the record permits it to do so. We recognize that the court, in lieu of addressing the practicability question first, may choose to review preliminarily the legal conclusion of the trial court in respect of the Township's claim of immunity. We leave the order of proceedings to the sound discretion of the Appellate Division.

## IV.

The judgment of the Appellate Division is reversed and the matter is remanded for further proceedings before the Appellate Division consistent with this opinion.

Chief Justice ZAZZALI and Justices LONG, ALBIN, WALLACE, and RIVERA–SOTO join in Justice LaVECCHIA's opinion. Justice HOENS did not participate.

*For reversal and remandment*—Chief Justice ZAZZALI and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO—6.

*Opposed*—None.