**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4685-16T1

SOMA LABS, INC.,

     Plaintiff-Respondent,

v.

MANAVKUMAR G. SHAH
and VITACARE PHARMA,
LLC, f/k/a VITACARE LABS,
LLC,

     Defendants-Appellants,

and

PRIME PACK, LLC, d/b/a
PRIME PHARMACEUTICALS,

     Defendant.

_____

Argued January 31, 2019 – Decided May 13, 2019

Before Judges Simonelli, O'Connor and DeAlmeida.

On appeal from Superior Court of New Jersey, Chancery Division, Middlesex County, Docket No. C-000114-13.

Susheela V. Verma argued the cause for appellants (Law Offices of Susheela Verma, attorneys; Susheela V. Verma, of counsel and on the brief; Mildred V. Spiller, on the brief).

Larry E. Hardcastle, II, argued the cause for respondent (Lanciano & Associates, LLC, attorneys; Larry E. Hardcastle, II, on the brief).

PER CURIAM

In this matter, plaintiff Soma Labs, Inc. (Soma) alleged that its former employee, defendant Manavkumar G. Shah, misappropriated its trade secrets and breached a confidentiality and non-solicitation agreement by, in part, soliciting Soma's major customer on behalf of Shah's business, defendant VitaCare Pharma, LLC (VitaCare), a competitor of Soma.[1]  Defendants prevailed at trial, but appeal from the March 13, 2015 Chancery Division order denying their motion for leave to amend their answer to assert a counterclaim against Soma and a third-party complaint against Soma's principal, John Botzolakis.  Defendants also appeal from two separate May 22, 2017 orders denying their motion for frivolous litigation sanctions pursuant to N.J.S.A.

---

[1]  We shall sometimes collectively refer to Shah and VitaCare as defendants.

2A:15-59.1 and Rule 1:4-8, and their motion for fee-shifting under the New Jersey Trade Secrets Act (NJTSA), N.J.S.A. 56:15-1 to -9.[2] We affirm.

## I.

We first address the denial of defendants' motions for frivolous litigation sanctions under N.J.S.A. 2A:15-59.1 and Rule 1:4-8. The following facts inform our review.

Soma manufactures custom dietary supplements known as nutraceuticals, which it ships to its customers who then sell them to the public under the customers' brand names and labels. Nutraceuticals are foods or tablets containing health-giving additives. To create a nutraceutical tablet, "[i]n general, you take a mixed blend; you put it into the hoppers of a tablet machine; get the weight, the hardness, the thickness. And once it's approved by the lab, then it's run." However, in order to create the "mixed blend," the "manufacturer must determine whether the formula is directly compressible in a tablet press or will require granulation before it is compressible."

---

[2] Defendants also appealed from the June 18, 2015 order denying their motion for reconsideration of the March 13, 2015 order; however, they failed to address this issue in their merits brief. The issue, therefore, is deemed waived. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011); Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2019).

A-4685-16T1

"Directly compressible means you can take that mixture, mix it, and put it directly onto the tablet machine; it will run it." Where granulation is required, "[i]t means the flow may be bad, the compressibility may not be good; everything. There's a list of things that may not allow the material to be compressed." Further, granulation is a lengthier process, taking "at least [twenty], [twenty-five]" hours more than direct compression.

Soma claimed it developed two processes, alleged to be trade secrets, which would permit direct compression of mixtures otherwise requiring granulation. The first purported trade secret was used to introduce moisture into the mixture through a completely dry ingredient (the 1:1 trade secret). The second purported trade secret eliminated undesirable tablet characteristics that would otherwise have to be eliminated through granulation (the ratio trade secret).

Shah learned of the two processes during his employment with Soma. In November 2008, Shah executed a confidentiality and non-solicitation agreement (agreement), which precluded him from disclosing or using any of Soma's confidential information and trade secrets, soliciting any of Soma's customers for a three-year period following termination of his employment, or hiring any of Soma's employees.

4

Shortly after Shah's resignation in January 2011, Soma analyzed his computer and discovered that he removed some of Soma's confidential information while still employed, having sent it from his work email address to his personal email address. Soma also discovered that Shah forwarded additional Soma business information to his personal email address after his resignation and that defendants had hired a former Soma employee.

Soma later discovered, in June 2013, that Shah had solicited a "large" customer of Soma, discussing pricing for manufacturing nutraceuticals. As a result, Soma filed a complaint against defendants asserting claims for breach of the duty of loyalty, misappropriation of confidential and proprietary information, tortious interference with contract, tortious interference with prospective economic advantage, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, violation of the Computer System Act, N.J.S.A. 2A:38A-1 to -6, and misappropriation of trade secrets. Soma later filed an amended complaint adding claims of conversion, violation of the NJTSA, and fraudulent concealment and destruction of evidence.

The parties engaged in extensive motion practice during this litigation. Defendants repeatedly argued before Judge Frank M. Ciuffani that Soma's trade

A-4685-16T1

secrets claims were frivolous and "nothing more than a hoax" to harass defendants and stifle competition. Notably, however, defendants consented to the entry of temporary restraints, enjoining them, in part, from "using or disclosing any confidential or proprietary information of [Soma,]" which remained in effect throughout the litigation. In addition, Soma withstood defendants' motion for partial summary judgment, attempts to bar Soma's expert, and defendants' motion for involuntary dismissal at the close of Soma's evidence.

Soma's central claim was that defendants misappropriated Soma's trade secrets. Defendants' expert testified at the trial that the 1:1 trade secret was actually a process in the public domain referred to as "moisture activated dry granulation." He also testified that the ratio trade secret was in the public domain, pointing to a nutraceutical product line, available at Walmart, that he believed utilized the ratio trade secret in its manufacturing process.

Judge Ciuffani ultimately held that Soma failed to prove that the 1:1 trade secret and ratio trade secret were trade secrets or that Shah took trade secrets. In reaching this conclusion, the judge found Soma failed to protect the confidentiality of the purported trade secrets. For example, Soma did not have contractors or visitors at its facility sign confidentiality agreements; Soma

utilized the purported trade secrets prior to 2008, several years before to having its employees execute confidentiality agreements; and Soma did not adequately designate formulations and other protocols as trade secrets. The judge credited the testimony of defendants' expert that the two purported trade secrets were in the public domain. The judge also found that Shah took Soma's confidential information, but did not use it to compete against Soma.

Notably, Judge Ciuffani did not rule against Soma because he believed its claims lacked merit or that Soma instituted and continued the action in bad faith or for an improper purpose. In fact, the judge had indicated the opposite. When denying defendants' motion to dismiss at the close of Soma's case-in-chief, the judge noted "there certainly was enough there, including expert testimony and the like for the [c]ourt to find there . . . was protectable information." The judge further noted that he had "granted motions to dismiss at the end of a plaintiff's case. But this is a case where there's enough that's been put before this [c]ourt on a prima facie basis to withstand a motion to dismiss." Further, the judge was well aware of defendants' repeated assertion that the litigation was frivolous, but made no finding the litigation was frivolous and nothing in the voluminous record or the judge's extensive post-trial opinion indicate he ever believed the litigation was frivolous.

A-4685-16T1

Nevertheless, defendants filed a post-trial motion for frivolous litigation sanctions against Soma's attorney under Rule 1:4-8 and against Soma under N.J.S.A. 2A:15-59.1. The backbone of defendants' frivolous litigation argument was that Soma did not possess proprietary knowledge or information to substantiate its claim for misappropriation of trade secrets and therefore brought this litigation in bad faith to harass defendants and stifle competition.

The record reveals that defendants served a safe harbor notice on Soma in accordance with Rule 1:4-8 demanding dismissal of count four (Shah's misappropriation of trade secrets), count five (Shah's misappropriation of confidential and proprietary information) and count six (VitaCare's misappropriation of confidential and Proprietary information) of the first amended complaint. Defendants rooted the safe harbor notice entirely on Soma's first amended response to interrogatory 2, which asked the following:

> State in detail, and not in summary fashion, each and every formulae that you claim to be proprietary and confidential together with the facts based upon which you allege that you spent significant amount of money and resources in developing the same and that the same have been stolen, misappropriated and used by the defendants.

The safe harbor notice stated that Soma's trade secrets claims were frivolous because "[i]n its first amended response to [interrogatory 2], Soma admitted that

it is unable to 'identify documentation, which is proprietary and/or confidential to Soma . . . that has been misappropriated by defendants herein'" and thus "the factual allegations that Soma's proprietary information has been misappropriated does not have evidentiary support." However, Soma's entire response to interrogatory 2 was as follows:

> Objection: As this interrogatory and several other interrogatories set forth compound questions and given the twenty (20) total number of interrogatories shown on the face of the subject First Set of Interrogatories served by the defendants, this interrogatory in the aggregate violates paragraph 3 of the July 22, 2013 [c]ase [m]anagement [o]rder limiting interrogatory demands to twenty (20) with no subparts.
>
> Subject thereto and without waiving said objection, see the documentation produced in discovery and marked ATTORNEYS' EYES ONLY, CONFIDENTIAL or as unmarked, specifically, without limitation, see documentation bates stamped Soma v. Shah ATTORNEYS' EYES ONLY 001743 through 005376.
>
> More specifically, this interrogatory uses the term "formula." As a term of art in the nutraceutical industry, it is not the position of the plaintiff that a formula (i.e. a "label claim" or a "listing of ingredients") in and of itself constitutes a trade secret or is necessarily proprietary or confidential to [p]laintiff Soma Labs, Inc. However, it is the position of [p]laintiff Soma Labs, Inc. that formulations or "master formulas" with manufacturing method(s) and process(es) (as produced throughout the documentation bates stamped Soma v. Shah ATTORNEYS' EYES ONLY 001743 through 005376) are proprietary and

A-4685-16T1

confidential to Soma Labs, Inc. and, furthermore, taken as a whole and in specific parts, constitute trade secrets. All of this documentation and the information embodied thereon constitute property and confidences of the plaintiff. Development of a formula in an acceptable dosage form involves knowledge of pharmaceutical sciences and years of experience in working with various products. Over the past fifteen (15) years, Soma Labs, Inc. has developed numerous products and spent many hours in resolving specific problems and/or refining formulations in order to manufacture products with quality attributes.

Apart from the documentation identified and attached to the July 9, 2013 Botzolakis [c]ertification, until the defendants actually completely produce the formulations and other documentation used in the enterprise of [d]efendant VitaCare Pharma, L.L.C., the plaintiff[] cannot at this time further identify documentation, which is proprietary and/or confidential to Soma Labs, Inc., that has been misappropriated by the defendants herein. The plaintiff thus expressly reserves the right to amend this interrogatory response accordingly.

[(Emphasis added).]

The "documentation identified and attached to the July 9, 2013 Botzolakis [c]ertification" was in addition to documents Soma had already produced to support its trade secrets claims, and the newly produced documents included hundreds of pages of confidential and proprietary information of Soma.

Judge Ciuffani rejected defendants' challenge to the sufficiency of Soma's response to interrogatory 2, finding the information contained within the

10

documents Soma produced could form the basis of a trade secrets claim. The judge expressly held, when discussing the response and the trade secrets theory discussed within, that Soma was "very specific there. [Soma is] saying that it's not just . . . a formula, it's the process."

Judge Arnold L. Natali, Jr. heard defendants' motion for frivolous litigation sanctions, as Judge Ciuffani had retired. Judge Natali reviewed the entire record, including over forty-two orders, approximately 2400 pages of exhibits, and twenty-one transcripts, and heard extensive oral argument. The judge found the motion appeared to be procedurally defective. Nevertheless, the judge addressed the merits and found "[t]here simply wasn't anything in the record that [he] could locate to indicate that Judge Ciuffani in either words or substance concluded that the complaint [did not] have merit at any point." The judge emphasized it was difficult to "harmonize [defendants'] positions [that the litigation was frivolous] with the . . . undeniable fact that for some reason this case was never dismissed on trade secret [grounds] or otherwise[.]" The judge concluded that Soma's "firm[] belie[f] that the [complement] of events of [Shah's] transfer of the data, the contracting of [Soma's] employee, the access [Shah] had to information, and [Soma's] belief through expert testimony that [it] had a trade secret was why [Soma] prosecuted [the action]."

On appeal, defendants argue that Judge Natali failed to consider the significance of Soma's actions in bringing the lawsuit for which there were no legitimate grounds and which was designed to harass defendants and stifle competition.

We review the judge's decision on a motion for frivolous lawsuit sanctions under an abuse-of-discretion standard. McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 498 (App. Div. 2011). Reversal is warranted "only if [the decision] 'was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment.'" Ibid. (quoting Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005)). We discern no abuse of discretion here.

Rule 1:4-8 frivolous litigation sanctions against an attorney or pro se party "are specifically designed to deter the filing or pursuit of frivolous litigation[.]" LoBiondo v. Schwartz, 199 N.J. 62, 98 (2009). A second purpose of the rule is to compensate the opposing party in defending against frivolous litigation. Toll Bros., Inc. v. Twp. of W. Windsor, 190 N.J. 61, 71 (2007). The rule provides for the imposition of sanctions where the attorney or pro se party filed a pleading or a motion with an "improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation[,]" Rule 1:4-8(a)(1), or by

asserting a claim or defense that lacks the legal or evidential support required by Rule 1:4-8(a)(2), (3) and (4). State v. Franklin Sav. Account No. 2067, 389 N.J. Super. 272, 281 (App. Div. 2006). "For purposes of imposing sanctions under Rule 1:4-8, an assertion is deemed 'frivolous' when 'no rational argument can be advanced in its support, or it is not supported by any credible evidence, or it is completely untenable.'" United Hearts, LLC v. Zahabian, 407 N.J. Super. 379, 389 (App. Div. 2009) (quoting First Atl. Fed. Credit Union v. Perez, 391 N.J. Super. 419, 432 (App. Div. 2007)).

The nature of litigation conduct warranting sanctions under Rule 1:4-8 has been strictly construed. Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 1:4-8 (2019). Accordingly, Rule 1:4-8 sanctions will not be imposed against an attorney who mistakenly files a claim in good faith. Horowitz v. Weishoff, 346 N.J. Super. 165, 166-67 (App. Div. 2001); see also First Atl. Fed. Credit Union, 391 N.J. Super. at 432 (holding that an objectively reasonable belief in the merits of a claim precludes an attorney fee award); K.D. v. Bozarth, 313 N.J. Super. 561, 574-75 (App. Div. 1998) (declining to award attorney's fees where there is no showing the attorney acted in bad faith).

Frivolous litigation sanctions must be in accord with the procedural requirements of Rule 1:4-8. Subsection (b)(1) of the Rule requires a party

seeking frivolous litigation sanctions to "file a separate motion [for the sanction] describing the specific conduct alleged to be a violation of the Rule." Toll Bros., 190 N.J. at 69. Prior to filing such a motion, the litigant seeking the sanction must "serve a written notice and demand on the attorney or pro se party, which must include a request that the allegedly frivolous paper [or pleading] be withdrawn." Ibid. This notice is generally referred to as a "safe harbor" notice. Ibid. The notice must "set [] forth 'with specificity' the basis for his or her belief that the pleading is frivolous. The notice must be sufficiently specific and detailed to provide an opportunity to 'withdraw the assertedly offending pleadings.'" Ferolito v. Park Hill Ass'n, 408 N.J. Super. 401, 408 (App. Div. 2009) (quoting Trocki Plastic Surgery Ctr. v. Bartkowski, 344 N.J. Super. 399, 406 (App. Div. 2001)). Further, the motion must be filed "no later than [twenty] days following the entry of final judgment." R. 1:4-8(b)(2). Strict compliance with each procedural requirement is "a prerequisite to recovery[,]" and failure to conform to the rule's procedural requirements will result in a denial of the request for an attorney's fees sanction. Franklin Sav. Account No. 2067, 389 N.J. Super. at 281.

The court may award reasonable attorney's fees and costs to the prevailing party on a motion for frivolous lawsuit sanctions under Rule 1:4-8(b)(2). In

14

order to establish reasonableness, the moving party's attorney must submit an affidavit of services along with the motion, <u>Rule</u> 4:42-9(b), which shall include the following information:

> (1)   the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2)   the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3)   the fee customarily charged in the locality for similar legal services;
>
> (4)   the amount involved and the results obtained;
>
> (5)   the time limitations imposed by the client or by the circumstances;
>
> (6)   the nature and length of the professional relationship with the client;
>
> (7)   the experience, reputation, and ability of the lawyer or lawyers performing the services;
>
> (8)   whether the fee is fixed or contingent.
>
> [<u>RPC</u> 1.5(a).]

The affidavit of services must also include "a detailed statement of the time spent and services rendered by paraprofessionals, a summary of the paraprofessionals' qualifications and the attorney's billing rate for

paraprofessional services to clients generally[,]" and a statement as to how much the client had paid, and "what provision, if any, has been made for the payment of fees to the attorney in the future." R. 4:42-9(b) and (c).

N.J.S.A. 2A:15-59.1(a)(1), which governs frivolous litigation sanctions against parties,[3] provides that:

> [a] party who prevails in a civil action, either as plaintiff or defendant, against any other party may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous.

A finding that the pleading is "frivolous" must be based upon a finding that:

> (1) The complaint, counterclaim, cross-claim or defense was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury; or
>
> (2) The nonprevailing party knew, or should have known, that the complaint, counterclaim, cross-claim or defense was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.
>
> [N.J.S.A. 2A:15-59.1(b)(1)-(2).]

---

[3] Frivolous litigation claims against parties governed by N.J.S.A. 2A:15-59.1 are affected by the procedural but not the substantive provisions of Rule 1:4-8 governing attorneys. Toll Bros., 190 N.J. at 69-73.

The frivolous litigation statute is interpreted restrictively. DeBrango v. Summit Bancorp, 328 N.J. Super. 219, 226 (App. Div. 2000). Sanctions should be awarded only in exceptional cases. Fagas v. Scott, 251 N.J. Super. 169, 181 (Law Div. 1991).

"'[T]he burden of proving that the non-prevailing party acted in bad faith' is on the party who seeks fees and costs pursuant to N.J.S.A. 2A:15-59.1." Ferolito, 408 N.J. Super. at 408 (alteration in original) (quoting McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 559 (1993)). When a prevailing party's allegation is based on an assertion that the non-prevailing party's claim lacked "a reasonable basis in law or equity," and the non-prevailing party is represented by an attorney, "an award cannot be sustained if the '[non-prevailing party] did not act in bad faith in asserting' or pursuing the claim." Ibid. (quoting McKeown-Brand, 132 N.J. at 549). As we stated:

> The rationale for requiring proof of bad faith is that clients generally rely on their attorneys "to evaluate the basis in law or equity of a claim or defenses," and "a client who relies in good faith on the advice of counsel cannot be found to have known that his or her claim or defense was baseless."
>
> [Ibid. (quoting McKeown-Brand, 132 N.J. at 557-58).]

"When the [non-prevailing party's] conduct bespeaks an honest attempt to press a perceived, though ill-founded and perhaps misguided, claim, he or she

17

should not be found to have acted in bad faith." Belfer v. Merling, 322 N.J. Super. 124, 144-45 (App. Div. 1999). "Thus, a grant of a motion for summary judgment in favor of a [prevailing party], without more, does not support a finding that the [non-prevailing party] filed or pursued the claim in bad faith." Ferolito, 408 N.J. Super. at 408.

Defendants' motion was procedurally defective. First, "a prevailing party's obligation to give proper notice as a condition of recovering an award of fees and costs is not fulfilled by a notice that alerts a party to the frivolous nature of a different claim." Id. at 409. Defendants' safe harbor notice identified only three of the fourteen claims in the first amended complaint as being frivolous, namely, Shah's alleged misappropriation of trade secrets, and Shah's and VitaCare's alleged misappropriation of confidential and proprietary information. Thus, the safe harbor notice was ineffective as to the remaining claims.

Second, Soma's response to interrogatory 2 was the sole basis for defendants' claim that counts four, five and six were frivolous. The safe harbor notice stated that Soma admitted it was unable to identify documentation, which is proprietary and/or confidential to Soma that had been misappropriated by defendants. The safe harbor notice did not state any other reason the claims were frivolous. However, Soma produced documents, both before and with its

interrogatory response, that were proprietary and/or confidential to Soma, and Judge Ciuffani found the information contained within those documents could form the basis of a trade secrets claim. Thus, the safe harbor notice was also inadequate as to the misappropriation of trade secrets and the misappropriation of confidential and proprietary information claims.

Lastly, defendants' counsel did not submit the mandated affidavit of services. Rather, she submitted a lengthy certification replete with hearsay, in violation of Rule 1:6-6. For all of these reasons, the motion was procedurally defective warranting the denial of the motion. Franklin Sav. Account No. 2067, 389 N.J. Super. at 281.

The motion was also substantively without merit for the reasons Judge Natali expressed in his oral opinion. We have considered defendants' arguments to the contrary in light of the record and applicable legal principles, and conclude they are without sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E). We are satisfied that defendants failed to establish the requirements for frivolous litigation sanctions under N.J.S.A. 2A:15-59.1 and Rule 1:4-8. Defendants failed to prove that Soma or its attorney acted in bad faith in asserting or pursuing this matter. To the contrary, the evidence

established that, however ill-founded or misguided Soma's conduct may have been, it honestly sought to protect it business interests.

## II.

Defendants also moved for fee shifting under the NJTSA. The statute's bad faith litigation provision, N.J.S.A. 56:15-6(b), provides, in pertinent part, that the court may award attorneys' fees and costs to the prevailing party if "a claim of misappropriation is made in bad faith[.]" The NJTSA "is based on the 'Uniform Trade Secrets Act' [UTSA] prepared by the National Conference of Commissioners on Uniform State Laws." N.J. Assembly Comm. Statement to A. 921 (2011). Of the fifty-one jurisdictions to adopt legislation based on the UTSA, only New Jersey has taken the measure of defining what constitutes "bad faith." N.J.S.A. 56:15-6 defines "bad faith" as

> that which is undertaken or continued solely to harass or maliciously injure another, or to delay or prolong the resolution of the litigation, or that which is without any reasonable basis in fact or law and not capable of support by a good faith argument for an extension, modification or reversal of existing law.

The statute's definition of bad faith mirrors the language of Rule 1:4-8(a)(1)-(4) and N.J.S.A. 2A:15-59.1(b)(1)-(2); therefore, the law interpreting the rule and statute is instructive. There is thus no need to look to other jurisdictions for guidance, as defendants propose, specifically California and Pennsylvania,

20

which adopt the standard of "objective speciousness . . . and subjective bad faith," unknown in New Jersey law. <u>See e.g</u> <u>SASCO v. Rosendin Elec., Inc.</u>, 142 Cal. Rptr. 3d 828, 845-48 (Ct. App. 2012).[4] Nevertheless, we address that standard for the sake of completeness.

We agree with Judge Natali that the out-of-jurisdiction case law is inapposite and adopting foreign analysis would constitute a failure to recognize that New Jersey veered from the UTSA by internally defining "bad faith." The judge also recognized the similarities between N.J.S.A. 56:15-6, N.J.S.A. 2A:15-59.1, and <u>Rule</u> 1:4-8, finding that the New Jersey Legislature imported N.J.S.A. 56:15-6 into the frivolous litigation standard.

Lastly, Judge Natali reapplied the N.J.S.A. 2A15:59.1/<u>Rule</u> 1:4-8 standard in the context of defendants' motion for fee shifting under the NJTSA, again denying the motion for the same reasons he denied their motion under <u>Rule</u> 1:4-8 and N.J.S.A. 2A:15-59.1. Because the judge made the correct legal decision by analyzing N.J.S.A. 56:15-6 in terms of the existing New Jersey frivolous litigation framework, we will briefly discuss his analysis of the "objective speciousness and subjective bad faith" standard.

---

[4] Further, opinions from other jurisdictions are not binding on us. <u>See</u> <u>Lipkowitz v. Hamilton Surgery Ctr., LLC</u>, 415 N.J. Super. 29, 36 (App. Div. 2010); <u>R.</u> 1:36-3.

Citing <u>Yield Dynamics, Inc. v. TEA Sys. Corp.</u>, 66 Cal. Rptr. 3d 1, 28 (Ct. App. 2007), Judge Natali found that under the "objective speciousness and subjective bad faith" standard, the imposition of sanctions are not warranted for merely "the inability to prove the necessary elements of the cause of action[,]" objective speciousness.  Citing <u>Gemini Aluminum v. Cal. Custom Shapes, Inc.</u>, 116 Cal. Rptr. 2d 358 (Ct. App. 2002), the judge determined that rather, a court must also find "subjective misconduct by relying upon direct evidence of [a] plaintiff's knowledge during certain points of the litigation and they also infer from the specious[ness] [of] the trade secret claim."  Citing <u>Aerotek, Inc. v. Johnson Grp. Staffing Co.</u>, No. C070832, 2014 Cal. App. Unpub. LEXIS 3365 (Ct. App. May 13, 2014), the judge considered the record in light of the above standards and found it was insufficient to support fee shifting.  The judge noted that unlike the examples from California, such as testimony that the individual who was seeking to put the other individual out of business, the judge found nothing in the record to indicate "subjective bad faith."

Judge Natali's review of defendants' motion for fee shifting under the NJTSA was impressive; he considered the relevant factors, explored the proposed alternatives, and reached a decision based on careful consideration of

the statute, case law, and the record. His denial of defendants' motion for fee shifting under the NJTSA was not an abuse of discretion.

III.

Defendants' remaining argument is that Judge Ciuffani erred in denying their motion to amend their answer to assert a counterclaim against Soma and a third-party complaint against Botzolakis for breach of the implied covenant of good faith and fair dealing with respect to the agreement. Judge Ciuffani found the amendment would be futile. We agree.

"Rule 4:9-1 requires that motions for leave to amend be granted liberally." Kernan v. One Washington Park Urban Renewal Assocs., 154 N.J. 437, 456 (1998). We review the grant or denial of a motion for leave to amend for abuse of discretion. Franklin Med. Assocs. v. Newark Pub. Sch., 362 N.J. Super. 494, 506 (App. Div. 2003). "That exercise of discretion requires a two-step process: whether the non-moving party will be prejudiced, and whether granting the amendment would nonetheless be futile." Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 2.2.1 on R. 4:9-1 (2019). Courts are thus "free to refuse leave to amend when the newly asserted claim is not sustainable as a matter of law . . . [because] a subsequent motion to dismiss must be granted." Notte, 185 N.J. at 501-02

(quoting Interchange State Bank v. Rinaldi, 303 N.J. Super 239, 256-59 (App. Div. 1997)).

"A covenant of good faith and fair dealing is implied in every contract in New Jersey." Wilson v. Amerada Hess Corp., 168 N.J. 236, 244 (2001) (quoting Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 420 (1997)).  Our Supreme Court has formulated the covenant as follows:

> In every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract; which means that in every contract there exists an implied covenant of good faith and fair dealing.
>
> [Id. at 245 (quoting Sons of Thunder, 148 N.J. at 421).]

To establish a claim for breach of the covenant, the claimant must allege conduct by the opposing party which "destroyed [the claimant]'s reasonable expectations and right to receive the fruits of the contract [.]"  Sons of Thunder, 148 N.J. at 425.

Defendants' argument in support of the amendment fell within three general categories: (1) the agreement was a contract of adhesion, as it was prepared by Soma without any input from Shah; (2) the agreement would unfairly burden the future employment prospects of Soma's former employees, as it contained one sided, vague and broad terms and would prevent an

employee, including Shah, from engaging in gainful employment of their choice after departure from Soma; and (3) Soma's creation and enforcement of the agreement were both done in bad faith, as Soma had no definite information that was deemed to be proprietary or was desired to be protected, Botzolakis was aware of this, and Soma and Botzolakis knew that Soma was not facing any irreparable harm.

Defendants' proposed amendment, and argument in support thereof, failed to allege the destruction of Shah's reasonable expectations and right to receive the fruits of the agreement. Rather, as Judge Ciuffani noted, the amendment and argument spoke only to whether or not the agreement was a valid enforceable agreement. The judge was thus correct to disregard defendants' argument as either the classic argument against enforceability of restrictive covenants in the post-employment context, or a duplication of defendants' argument that Soma's claims were frivolous.

We recognize the defendants' argument relating to the adhesive formation of a contract, or bad faith in its execution or enforcement, or the undue exercise of discretion, can support an affirmative claim for a breach of the implied covenant of good faith and fair dealing. See Seidenberg v. Summit Bank, 348 N.J. Super. 243, 260-61 (App. Div. 2002) (detailing many examples from case

law of "the application of the implied covenant of good faith and fair dealing"). For example, in <u>Seidenberg</u>, the plaintiffs alleged that the defendant "used insufficient energy in discretionary areas[,]" by failing to pursue leads, withholding information, and frustrating and delaying marketing efforts. <u>Id.</u> at 261.

This is akin to defendants' argument that Soma and Botzolakis unfairly exercised discretion in broadly identifying purported trade secrets. However, the missing link in defendants' argument is the effect the alleged undue exercise of discretion had on Shah's reasonable expectations and right to receive the fruits of the contract. <u>Seidenberg</u> is clear these factors are essential to sufficiently allege a claim for breach of the implied covenant of good faith and fair dealing:

> That is, plaintiffs allege that [the defendant] failed to pursue or create leads, frustrated or delayed marketing efforts, and deprived plaintiffs of information <u>which might improve their benefits under the contract</u>, thus sufficiently alleging a cause of action under the discretionary tranche of the multi-faceted implied covenant of good faith and fair dealing.
>
> [<u>Ibid.</u> (emphasis added).]

<u>See also</u> <u>id.</u> at 262 (alteration in original) (In outlining a claim under the bad faith tranche, "the issue is whether . . . [the defendant] acted in bad faith or violated any commercially reasonable standard thereby depriving plaintiffs of

their right to make a reasonable profit[]" from supply contract (quoting <u>Wilson</u>, 168 N.J. at 253)).  In failing to address the effect of Soma's and Botzolakis's alleged conduct on Shah's reasonable expectations and rights to receive the fruits of the agreement, <u>Sons of Thunder</u>, 148 N.J. at 425, defendants did not propose a legally sufficient claim of breach of the implied covenant of good faith and fair dealing.

Judge Ciuffani saw through defendants' transparent attempt to shelter its argument under the "good faith and fair dealing" umbrella in an effort to raise an affirmative claim.  After affording defendants' attorney a second opportunity to provide "an offer of proof" as to what counsel would present to the court to substantiate the proposed claim, and receiving the same arguments in reply, the judge properly denied defendants' motion.

On appeal, defendants essentially "double down" on the argument made before Judge Ciuffani, focusing on the broad language of the agreement and Soma's and Botzolakis's alleged failure to identify trade secrets or proprietary information.  Again, defendants fail to address how these allegations, even if true, destroyed Shah's reasonable expectations and right to receive the fruits of the agreement.

A-4685-16T1

Further, defendants argue that Judge Ciuffani denied the motion because he was of the view that breach of the implied covenant of good faith and fair dealing was not a stand-alone cause of action. The motion transcript plainly contradicts this argument. It is clear from the colloquy between the judge and defendants' attorney that when the judge said "[t]here is no such claim[,]" he was referring to the deficient claim defendants were attempting to assert, which did not conform to the requirements of a cause of action for breach of the implied covenant of good faith and fair dealing.

Because the proposed amendment was not sustainable as a matter of law, the denial of defendants' motion to amend based on futility was not an abuse of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4685-16T1