276 N.J. Super. 501 (1994)
648 A.2d 275
BROOKSIDE APARTMENTS, INC., PLAINTIFF-APPELLANT,
v.
C.S., J.D., E.A., S.T., R.T., P.T., AND V.D., DEFENDANTS-RESPONDENTS. JAMES AND CHRISTINE CERONE, PLAINTIFFS-APPELLANTS,
v.
A.S., INDIVIDUALLY AND AS GUARDIAN OF C.S.; E.A., INDIVIDUALLY AND AS PARENT OR GUARDIAN OF J.D.; R. AND P.T., INDIVIDUALLY AND AS PARENTS OF S.T., AND V.D., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 1994.
Decided October 17, 1994.
*502 Before Judges PETRELLA, BROCHIN and CUFF.
Anthony P. Pasquarelli argued the cause for appellants (Methfessel & Werbel, attorneys; Darrell M. Felsenstein, on the brief).
Moire E. Colquhoun argued the cause for respondents (Colquhoun & Colquhoun, attorneys; Ms. Colquhoun, on the brief).
No briefs were filed on behalf of A.S., C.S., E.A., J.D. or V.D.
The opinion of the court was delivered by BROCHIN, J.A.D.
Plaintiffs[1] Brookside Apartments, Inc. and James and Christine Cerone appeal from a judgment of the Law Division dismissing their complaints[2] because of their attorneys' egregious misconduct.
The Cerones were tenants of a building owned by Brookside Apartments, Inc. The building was substantially damaged by a fire that plaintiffs allege was caused by defendants C.S., J.D., and S.T. who are said to have entered the building to commit a burglary.
*503 The alleged perpetrators, who are now adults, were juveniles at the time of the fire. Their identities, although known to the police, were therefore not publicly disclosed.
Plaintiffs filed their initial complaints on March 17, 1988, and November 14, 1989. They named only John Does as defendants, presumably because they were unaware of the actual identities of the juveniles who had caused the fire and of their parents or guardians. Plaintiff Brookside Apartments, Inc. then applied to a Law Division judge (other than the one who entered the order appealed from), on notice only to the Essex County Prosecutor, for an order "compelling the local authorities to release the names and addresses of all juveniles involved regarding the damage to property of the plaintiff situated at 31 Morris Place, Bloomfield, New Jersey."
The application was based on N.J.S.A. 2A:4A-60,[3] which, insofar as pertinent, reads as follows:
a. Social, medical, psychological, legal and other records of the court and probation department, and records of law enforcement agencies, pertaining to juveniles charged as a delinquent or found to be part of a juvenile-family crisis, shall be strictly safeguarded from public inspection. Such records shall be made available only to:
[The plaintiffs are not among the persons enumerated in the subparts of paragraph "a." Paragraph "b" is also inapplicable to this case.]
c. Information as to the identity of a juvenile, the offense charged, the adjudication and disposition shall be disclosed to:
(1) The victim or a member of the victim's immediate family; ....
........
(4) A party in a subsequent legal proceeding involving the juvenile, but only upon approval by the court and for the sole purpose of impeaching the juvenile as a witness.
See also R. 5:19-2(b) (incorporating and reiterating N.J.S.A. 2A:4A-60 to -62).
*504 The judge before whom plaintiffs moved in reliance on N.J.S.A. 2A:4A-60 entered an order dated March 28, 1990, which directed that
the investigating police be and are hereby compelled to release the names and addresses of all juveniles apprehended regarding damage to the plaintiff's property at Brookside Apartments Inc., 31 Morris Place, Bloomfield, New Jersey, on or about March 30, 1987, together with their guardians' names and addresses and such other information as may be permitted by Statute and [sic] such case made and provided; .... [Emphasis added.]
Since plaintiffs' complaints were amended to name the juveniles and their parents or guardians as defendants on December 20, 1990, and April 2, 1991, we infer that the March 28, 1990, order produced the requisite information. Pursuant to consent orders, the defendants' answers were filed January 27, 1992.
On September 20, 1991, defendant Salvatore Turano provided answers to interrogatories. The substance of his answers was that he did not then remember any of the particulars of the fire that he and the other defendants were alleged to have started. No further discovery was undertaken by plaintiffs until after the first trial notice was received on April 12, 1993.
On that day, the parties received a notice that the case was scheduled for a trial to commence May 3, 1993. According to the certification of plaintiffs' attorney, on May 4, 1993, the trial was adjourned to June 21, 199[3][4].
The certification describes as follows what happened next:
6. In response to defendant's vague answers to interrogatories and in order to ascertain the identity of any and all other witnesses and possibly obtain any results of the Bloomfield Police investigation, I contacted Detective Johnson of the Bloomfield Police Department on May 4, 1993. I identified myself and indicated my involvement in the case and ask[ed] whether or not he or the Bloomfield Police Department were in possession of any documents concerning the subject fire. Detective Johnson indicated that they did have some documents, but that in order for me to obtain this information I would need an Order and Subpoena. I indicated that contained within our file was an Order signed by the Honorable Edmund M. Kirby, which provided for "the investigating police be and are hereby compelled to *505 release the names and addresses of all juveniles apprehended regarding damage to the plaintiff's property at Brookside Apartments, 31 Morris Place, Bloomfield, New Jersey on or about March 30, 1987, together with their guardians' names and addresses and such other information as may be permitted by Statute and such case made and provided." .... Detective Johnson indicated that we would have to get authorization from the Essex County Prosecutor's office, Juvenile Division, that this Order was acceptable.
7. I immediately called the Essex County Prosecutor's office, Juvenile Division and spoke with Dan Maisel. I informed Mr. Maisel of my interest in the case and the reason for my call, as well as the facts surrounding the case and read Mr. Maisel Judge Kirby's Order. I inquired from Mr. Maisel as to whether Judge Kirby's Order was sufficient or whether or not I needed a more specific Order, he indicated to me that the Order that I had would be sufficient to release the Bloomfield Police Department documents. I asked permission to have Detective Johnson call Mr. Maisel to confirm this permission, and he indicated that this would be alright.
8. I called Detective Johnson and informed him of my conversation with the Essex County Prosecutor's office, at which time he told me that he would call them and call me back. He called me back a few minutes later and indicated that the Prosecutor's office ok'd the release of these documents and that I could come and pick them up the following day.
9. On Wednesday, May 5, 1993 I proceeded to the Bloomfield Police Department, along with a copy of the Order and a copy of the Subpoena.... Upon arrival, I met with Detective Johnson and gave him the Order and Subpoena. He handed it to another gentleman, who appeared to be a superior, who ok'd the Order and the Subpoena and authorized Detective Johnson to release the Bloomfield Police Department file to me.
10. Upon returning to my office, I reviewed these documents for the first time  I was surprised to learn that there was a sworn statement from defendant, S.T., that contradicted both his sworn answers to interrogatories and the representation of his counsel regarding the events that led to the fire and which effectively admitted that he, as well as his two friends, caused the fire in the basement of the Brookside Apartments. (See Exhibit D attached hereto.)
11. I immediately prepared Supplemental Interrogatories, reflecting the information contained in the Bloomfield Police Department reports, as well as the statements and attached all of the documents received from the Bloomfield Police Department to the Supplemental Interrogatories. Instead of mailing them the next day on Thursday, May 6, 1993, inasmuch as there was a settlement conference scheduled for Friday, I felt it was important that the other counsel had these reports prior to meeting at the settlement conference.
According to the certification of defendants' counsel, plaintiffs did not notify her in advance that they were going to attempt to obtain the police reports pertaining to the defendants, and she had been unaware of the March 28, 1990, order until the May 7, 1993, *506 settlement conference. We do not have a transcript of what was said when the attorneys met for the settlement conference. The judge who presided apparently strongly condemned plaintiffs' attorneys' conduct, and she suggested that defendants' attorneys move to reseal the records.
The Law Division judge's condemnation of the conduct of plaintiffs' attorneys was entirely warranted. N.J.S.A. 2A:4-65, as we construed it in State in Interest of D.H., 153 N.J. Super. 490, 493, 380 A.2d 295 (App.Div. 1977), permitted plaintiffs to obtain as of course only the defendants' names, addresses, the offenses with which they were charged, and the disposition of those charges. In that case, property was damaged by a fire which had allegedly been caused by juveniles. The fire insurer, who had compensated the owner on account of the damage, moved pursuant to the predecessor to the present statute, which was substantially identical to the current statute insofar as is pertinent to the court's holding, for copies of the relevant police reports in order to ascertain the proper parties against whom to commence suit. Id. at 494, 380 A.2d 295. We held that the movant was entitled only to the information which the statute permits to be disclosed as a matter of course, and then only to the extent that that information was required in order to ascertain the identities of prospective defendants. We therefore permitted the insurer to learn the names and addresses of the allegedly culpable juveniles and of their parents or guardians, but we held that it was not entitled to disclosure of the complete police reports. Id. at 495-96, 380 A.2d 295. No greater showing of need has yet been made in the present case. To obtain anything more, plaintiffs were obligated to move for its disclosure on notice to the attorneys for the defendant. Procuring the police reports, including statements of the defendants, without notifying the defendants' attorneys, utilizing what was essentially an ex parte order obtained years before, was contrary to the statute, contrary to the court rules, R. 1:6-2; R. 5:19-2(b), and contrary to accepted practice.
*507 Furthermore, plaintiffs' use of a subpoena to obtain the documents was contrary to R. 1:9-2 and R. 4:14-7(c). The commentary to the latter rule states:
Its evident intent is to prohibit the apparently proliferating documentary practice of some attorneys, wholly unauthorized, to obtain discovery from non-parties, unilaterally and without notice to other parties, by the simple expedient of issuing a subpoena. The design of this rule makes it clear that a "discovery" subpoena may be issued only in connection with a scheduled deposition of the subpoenaed person, that all parties must be noticed of the issuance of such a subpoena and that all responses to the subpoena must be disclosed to all parties. It should, moreover, be interpreted and applied consistently with its intention of foreclosing unilateral discovery and giving adverse parties the opportunity to move to quash the subpoena or otherwise object to its compliance on the basis of privilege or other appropriate ground.

Pressler, Current N.J. Court Rules, Comment R. 4:14-7(c).
At the suggestion of the judge who presided over the settlement conference at which plaintiffs' attorneys disclosed their possession of the police reports to the court and to defendants' attorneys, defendants' attorneys moved for an order
resealing the improperly obtained juvenile records relative to this incident, striking the amendment to answers to interrogatories insofar as it relates to these documents and information obtained therefrom, disqualifying plaintiff's counsel, compelling the improperly obtained documents to be purged from the file, barring discussion of the matter between current counsel and future counsel, and awarding counsel fees for the within motion.
Thereafter, apparently after the motion judge had ruled orally that plaintiffs' counsel had acted improperly in obtaining the records, plaintiffs' counsel moved for an order "permitting disclosure of documents within the juvenile files of the defendants." To his certification in support of this motion, he attached the documents which were the subject of the motion and cross-motion, thus filing them with the court records. The motion judge reasonably viewed this further conduct on the part of plaintiffs' attorneys as a particularly brazen violation of her oral ruling and of the order that was to be entered.
On June 2, 1993, the court entered an order resealing the records, directing counsel to turn over their copies to the court, and striking the designation of witnesses whose identities had been learned from the improperly obtained records. The court *508 reserved decision on defendants' applications to disqualify plaintiffs' attorneys and for counsel fees.
On July 16, 1993, on the court's own motion, an order was entered dismissing the complaint with prejudice. Defendants had not asked for that relief.
On appeal from that order, plaintiffs argue:
POINT I
THE TRIAL COURT ERRED IN DISMISSING THE PLAINTIFFS/APPELLANTS CASE WITH PREJUDICE.
POINT II
THE PLAINTIFFS/APPELLANTS DID NOT VIOLATE N.J.S.A. 2A:4A-60 IN OBTAINING OR DISCLOSING POLICE REPORTS AND DEFENDANTS' STATEMENTS.
In view of what we have already said, it is apparent that plaintiffs' second point is entirely without merit.
We are, however, of the view that dismissal of plaintiffs' complaint with prejudice was a mistaken exercise of discretion. What was said in the frequently cited case of Jannson v. Fairleigh Dickinson University, 198 N.J. Super. 190, 194, 486 A.2d 920 (App.Div. 1985), is pertinent here:
Undoubtedly, there are some individuals "sophisticated enough in the affairs of the world to be able to select the good from the bad among [the] mass of lawyers throughout the country." [citation omitted] Unfortunately, this is not always the case. To be sure, instances of misconduct or incompetence are relatively rare in the legal profession. When they occur, however, the financial penalties heaped upon the client are often disastrous. Against this backdrop, we believe that the sins or faults of an errant attorney should not be visited upon his client absent demonstrable prejudice to the other party.
Defendants have not shown that the conduct of plaintiffs' attorneys has caused them "demonstrable prejudice" which cannot be adequately overcome by the Law Division's order of June 2, 1992, or by some appropriate variation of it. On remand, the Law Division will retain the discretion to modify that order and to consider any new application that may be made for the release of records.
*509 The judgment appealed from is reversed and the case is remanded to the Law Division for further proceedings not inconsistent with this opinion.
NOTES
[1] Colloquy between the court and counsel indicates that one or more insurance companies have been subrogated to the plaintiffs' interests. Insofar as this case is concerned, the procedural and substantive rights of the subrogees are identical to those of the subrogors.
[2] One complaint was filed by Brookside Apartments, Inc. and another complaint, which is substantially identical with the first, by Mr. and Mrs. Cerone. The two actions were consolidated by order of the Law Division.
[3] The statute was amended by L. 1994, c. 56, § 1 et seq. The amendment became effective June 29, 1994.
[4] The certification actually says, "June 21, 1992," but that is obviously an error.