913 A.2d 73

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. FRANKLIN SAVINGS ACCOUNT NUMBER 2067, HELD IN THE NAME OF ROY A. SILVER, SR., WITH AN APPROXIMATE BALANCE OF $6,558.88, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted October 4, 2006—Decided December 7, 2006.

274

Before Judges SKILLMAN, HOLSTON, JR. and GRALL.

*Stuart Rabner*, Attorney General, attorney for appellant (*Michael T. McCormick*, Deputy Attorney General, on the brief).

*Grimes & Grimes*, attorneys for respondent (*Patrick J. Grimes*, on the brief).

The opinion of the court was delivered by

GRALL, J.A.D.

The State appeals from a final order dismissing its complaint for forfeiture of Franklin Savings Account No. 2067 (account 2067). That account is held in the name of Roy A. Silver, Sr. The trial court granted Silver's motion to quash the State's subpoena for bank records, precluded further discovery and concluded that the State's evidence was inadequate to establish grounds for forfeiture. The court also required the State to pay costs and counsel fees in the amount of $1038.

In the context of this case, the State's violation of *Rule* 4:14–7(c) did not prejudice Silver or deprive him of the protection that the rule affords. Despite the inconsequential nature of the State's discovery violation, the court imposed a sanction that was tantamount to a dismissal of the State's case with prejudice. Because entry of that order was a mistaken exercise of discretion, which works an injustice, we reverse.

This forfeiture action was commenced following a criminal investigation by law enforcement officers of the State of Delaware. On February 22, 2005, the grand jurors for the Superior Court of New Castle County returned an indictment charging Silver with racketeering, receipt of stolen property and tax evasion. On March 18, 2005, the State of New Jersey applied for an order authorizing seizure and restraint of account 2067. That application was supported by affidavits from an investigator of this State and an officer involved in the investigation that led to the Delaware indictment. The affidavits included a reference to a $19,000 deposit to account 2067. A judge of the Superior Court of New Jersey determined that the affidavits established probable cause to believe that account 2067 was subject to forfeiture pursuant to *N.J.S.A.* 2C:64–1. Specifically, the judge determined that there was probable cause to believe that account 2067 was an integral part of, utilized in furtherance of, or contained proceeds of unlawful activity—receipt of stolen property, *N.J.S.A.* 2C:20–7; fencing, *N.J.S.A.* 2C:20–7.1; and money laundering, *N.J.S.A.* 2C:21–25.

The judge entered an order that authorized seizure of the account and required the bank to give the State access to the records.

Pertinent to the issues on this appeal, the order of March 18, 2005, provides: "[T]he holder of the property shall ... provide to representatives of the New Jersey Division of Criminal Justice all records respecting the captioned property, whenever requested during normal business hours...." By letter dated March 22, 2005, the State forwarded a copy of this order to Silver. Silver did not challenge the order.

On June 7, 2005, the State filed a civil complaint seeking forfeiture of account 2067. Paragraph ten of that complaint includes an express reference to the March 18, 2005 order. Silver retained an attorney and filed an answer and an amended answer.

On September 9, 2005, the State issued a subpoena and, by letter of the same date, sent Silver's attorney a copy of the subpoena. The subpoena commanded the bank to produce at depositions "[a]ny and all records of Franklin Savings Bank account number 2067, held in the name of Roy A. Silver, Sr. ...." The subpoena also advised: "Sending clear copies of the front and back of said documents prior to the [scheduled date and time of the oral deposition noticed herein] will constitute compliance with this subpoena."

On September 14, 2005, Silver's attorney notified the State that its subpoena did not comply with the Rules of Court. He referred the deputy attorney general to *Rule* 4:14–7(c), which provides:

> The subpoena shall state that the subpoenaed evidence *shall not be produced or released until the date specified for the taking of the deposition* and that if the deponent is notified that a motion to quash the subpoena has been filed, the deponent shall not produce or release the subpoenaed evidence until ordered to do so by the court or the release is consented to by all parties to the action.
> [Emphasis added.]

The attorney warned that his client would seek fees pursuant to *Rule* 1:4–8 unless the State promptly withdrew its defective subpoena. Twenty-three days later, on October 7, 2005, the State issued an amended subpoena, which complied with *Rule* 4:14–7(c).

The State also returned to the bank, unread, a summary of account 2067 that the bank previously had provided.

The day before the State issued the amended subpoena, Silver's attorney moved for an order quashing the subpoena, granting summary judgment and awarding fees and costs pursuant to *Rule* 1:4–8. In support of his motion for summary judgment, Silver produced evidence that showed that he had deposited $19,000 into account 2067 and tended to demonstrate that he received that money in payment of a claim under a policy of insurance.

In response to Silver's motion, the State provided the order of March 18, 2005. That order authorized the State to obtain and required the bank to provide the records for account 2067. The State contended that its violation of *Rule* 4:14–7(c) was inadvertent, not prejudicial and corrected before the twenty-eight-day period allowed prior to imposition of sanctions pursuant to *Rule* 1:4–8(b)(1). The State further argued that a grant of summary judgment prior to its review of the records was inappropriate because the legitimacy of a single deposit did not preclude proof that the account was used in furtherance of illegal activity or that its balance was traceable to proceeds of criminal conduct.

The motion judge found that the State's first subpoena did not comply with *Rule* 4:14–7(c). Noting that a central purpose of *Rule* 4:14–7(c) is to give the issuing party's adversary an opportunity to object and considering that the bank had complied, the judge determined that the only sanction that would remedy the violation was an order precluding the State from acquiring or utilizing any records of account 2067. The judge then considered the impact of that order on the State's ability to establish its case. He concluded that the State could not establish grounds for forfeiture given Silver's evidence of a legitimate source for the $19,000 deposit. The judge granted summary judgment and, without stating reasons, required the State to pay all fees and costs Silver incurred on the motion.

Trial courts have "inherent authority . . . to impose sanctions for . . . [blatant violations] of" *Rule* 4:14–7(c). *Cavallaro*

*v. Jamco Prop. Mgmt.*, 334 *N.J.Super.* 557, 571, 760 *A.*2d 353 (App.Div.2000) (alterations in original) (quoting *Summit Trust Co. v. Baxt.*, 333 *N.J.Super.* 439, 450, 755 *A.*2d 1214 (App.Div.), *certif. denied*, 165 *N.J.* 678, 762 *A.*2d 658 (2000)). Such sanctions should be measured and appropriate in light of the culpability of the offending party and the prejudice to the party whose right was infringed by the violation. *Id.* at 570–71, 760 *A.*2d 353. Prejudice must be assessed in light of the objectives of *Rule* 4:14–7(c). *See, e.g., id.* at 568–69, 760 *A.*2d 353 (noting that *Rule* 4:14–7(c) "is prophylactic and designed to avoid the result complained of" in that case, which was an acquisition of privileged information in a manner that deprived the adversary of an opportunity to object). *Rule* 4:14–7(c) "has three objectives: 1) to provide litigants the opportunity of full discovery from non-parties; 2) to afford notice of such inquiries to adversaries; and 3) to permit adversaries an appropriate opportunity to challenge the propriety of such discovery." *Id.* at 566, 760 *A.*2d 353. The remedy for a violation must be fashioned to address the prejudice demonstrated. *See Brookside Apartments, Inc. v.C.S.*, 276 *N.J.Super.* 501, 508–09, 648 *A.*2d 275 (App.Div.1994).

 The circumstances of a violation of *Rule* 4:14–7(c) are also relevant to the assessment of fault and prejudice. For example, where information inviting submission of documents before the date stated in the subpoena is hidden in a separate communication not given to one's adversary, the willfulness of the violation and its prejudicial impact on the adversary's right to object is apparent. *See Cavallaro, supra*, 334 *N.J.Super.* at 568–69, 760 *A.*2d 353 (noting that the adversary was not provided with a copy of the communication that violated *Rule* 4:14–7(c) by inviting the holder of the records to avoid the deposition by submitting the documents prior to the deposition date).

 Under the circumstances of this case, the State's use of a defective subpoena cannot be viewed as depriving Silver of an opportunity to object or giving the State unauthorized access to the information. The March 18, 2005 order authorizing the State

to acquire the records and compelling the bank to provide them is critical and was overlooked by the trial judge. When the State issued this subpoena, it had a court order that compelled the bank to surrender the records. Silver was, or should have been, aware of that order. The State mailed the order to Silver, and the order was referenced in the complaint filed in this forfeiture action. Silver had the opportunity to challenge, limit or vacate the March 18 order, but he took no action.

Although the State's subpoena violated *Rule* 4:14–7(c), the violation did not harm Silver or benefit the State. The State did not gain access to any records it was not entitled to receive under the prior court order. So long as the order of March 18, 2005 was in effect, the State had a right to acquire the records without additional notice to Silver and the bank was obligated to produce them. Thus, there was no need for remedial action. *Cf. Cavallaro, supra,* 334 *N.J.Super.* at 569, 760 *A.*2d 353 (discussing remedial measures). The prior court order authorizing the State's access fully served the purposes of *Rule* 4:14–7(c).

 In the absence of any "demonstrable prejudice," issuance of an order that precluded the State's access to the records of account 2067 was a mistaken exercise of discretion that worked an injustice. *See Brookside, supra,* 276 *N.J.Super.* at 507–09, 648 *A.*2d 275. As a direct consequence of that order, the State's case was dismissed on motion for summary judgment. The ruling was the equivalent of a dismissal with prejudice based on a non-prejudicial violation of *Rule* 4:14–7(c). We have previously held that the extreme sanction of dismissal is inappropriate where a less drastic remedy would rectify the harm. *Id.* at 508, 648 *A.*2d 275; *see also Cavallaro, supra,* 334 *N.J.Super.* at 571, 760 *A.*2d 353 (discussing *Brookside*). Where there is no prejudice to the litigant, there is no need for a remedy that has an impact on the litigation of the merits of the case. Accordingly, the order precluding further discovery of records of account 2067 and granting summary judgment is reversed.

 We also reverse the order requiring the State to pay costs and counsel fees. Silver requested fees and costs pursuant to *Rule* 1:4–8 but did not comply with its provisions. *Rule* 1:4–8(b)(1) requires a "motion made separately from other applications" and notice to the adversary of its right to take action to withdraw the objectionable pleading within a twenty-eight-day period. Strict compliance is a prerequisite to recovery. *See Cmty. Hosp. Group, Inc. v. Blume Goldfaden Berkowitz Donnelly Fried & Forte, P.C.*, 381 *N.J.Super.* 119, 127, 885 *A.2d* 18 (App. Div.2005), *certif. denied*, 187 *N.J.* 489, 901 *A.2d* 952 (2006). Moreover, *Rule* 1:4–8 does not authorize sanctions for a technical violation of a discovery rule. The sanctions for frivolous litigation apply when an attorney or pro se party has violated *Rule* 1:4–8 by presenting papers for an "improper purpose" or asserting claims or defenses that lack the legal or evidential support that paragraph (a) of *Rule* 1:4–8 requires. *R.* 1:4–8(b)(1)(i)–(ii). Because the State had a court order that was based upon a finding of probable cause and authorized acquisition of the records it sought, there is no basis for an inference that the issuance of a defective subpoena was done for an improper purpose or without the evidential support required at this early stage of the forfeiture proceeding. *See R.* 1:4–8(a)(1)–(4).

Reversed and remanded for further proceedings.