**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0098-24

IN THE MATTER OF THE
ESTATE OF ELISE MORENON,
deceased.

_____

Submitted October 21, 2025 – Decided December 15, 2025

Before Judges Gooden Brown and DeAlmeida.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. P-000361-23.

Leonard S. Miller, PA, attorney for appellant Anders Meyer (Leonard S. Miller, on the briefs).

The Knee Law Firm, LLC, attorneys for respondent Peggy Sheahan Knee (Robert A. Knee, of counsel and on the briefs; Kylie S. Chasse, on the briefs).

PER CURIAM

Plaintiff Anders Meyer appeals from three Chancery Division orders in this probate matter: (1) the August 26, 2024 order dismissing his complaint seeking to remove defendant Peggy Sheahan Knee as the executor of the estate of Elise Morenon, and granting summary judgment to Knee on her counterclaim

regarding the interpretation of provisions of Morenon's February 10, 2014 last will and testament (Will) relating to certain real property; (2) the September 27, 2024 order awarding Knee's counsel $124,701.13 in attorney's fees and costs; and (3) the September 27, 2024 order enforcing the court's June 27, 2024 order and sanctioning Meyer $4,009.50 in additional attorney's fees because Knee was compelled to seek relief after Meyer's continuous refusal to comply with the June 27, 2024 order.  We affirm.

I.

In 2013, Morenon retained Knee, an attorney, to assist her with estate planning.  According to Knee, during an in-person meeting, Morenon identified her family members, assets, and how she wanted those assets to be distributed when she died.  Morenon told Knee she had never been married, did not have a spouse or partner, and had no children.  Morenon identified her next of kin as her brother Ernest Pierre Morenon, and his two children, niece Elizabeth Claire Morenon, and nephew Will McPherson Morenon.

Knee certified Morenon also "advised that she had this 'person' named Anders Meyer . . . who 'lives with' [her] in her apartment."  When Knee asked Morenon how to refer to him in estate documents, "ie., as her boyfriend, her partner, her friend, or something else, she said 'just refer to him as Anders

A-0098-24

Meyer.'"  Morenon owned two adjacent cooperative Apartments, #3C and #3D, in a Fort Lee building.  She and Meyer occupied Apartment #3C as a residence, and used Apartment #3D as an art studio and office.

Morenon informed Knee that upon her death she wanted to give Meyer the right to live in Apartment #3C, provided he paid the maintenance fees and real estate taxes on the unit during his occupancy.  Morenon stated she did not want to give Meyer title to, or a life estate in, Apartment #3C, and wanted his right to occupy the unit to terminate if Meyer failed to pay the fees and taxes on the unit or vacated the apartment for a continuous period of six or more months.  Morenon wanted her brother to inherit Apartment #3D on her death and to inherit Apartment #3C upon Meyer's death or the loss of his right of occupancy.

Morenon instructed Knee she wanted her residuary estate held in trust for Meyer with the net income payable to him and discretion in the trustee as to principal distributions.  Upon Meyer's death, the remaining balance of the trust would be distributed to Morenon's niece and nephew.

Morenon informed Knee she wanted her to serve as executor of the estate and expressly rejected the suggestion Meyer serve as executor.  Morenon told Knee an attorney served as executor of her father's estate and the arrangement worked well for her and her brother.  Morenon instructed Knee to name

3

A-0098-24

Morenon's brother as trustee of the trust, and as successor executor in the event Knee could not serve.

Knee drafted a will reflecting Morenon's instructions and sent a draft of the document to her on March 29, 2013. Morenon subsequently requested changes to the draft will. She no longer wanted Apartment #3C to be distributed to her brother after Meyer's death or loss of right of occupancy. She instead directed that upon the occurrence of either of those events, Apartment #3C be sold with the net sales proceeds added to the trust. Knee sent Morenon a revised draft of the will reflecting these changes on June 19, 2013.

On or about January 1, 2014, Morenon mailed a marked-up copy of the draft will to Knee with Morenon's handwritten edits. Morenon and Knee later discussed the revisions on the telephone. Morenon stated she wanted to give Meyer the choice of living in either Apartment #3C, or Apartment #3D. She stated her concern Meyer might not be able to afford the upkeep on Apartment #3C, and the studio Apartment #3D might be a better option for him. According to Knee, Morenon never expressed a desire to bequeath either Apartment #3C or Apartment #3D to Meyer. Nor did she state an intention to permit Meyer to occupy both Apartment #3C and Apartment #3D. Knee revised the draft will as instructed.

4

A-0098-24

On February 10, 2014, Morenon appeared at Knee's office and signed the Will, which was witnessed and notarized. For our purposes, the relevant provisions of the Will appear in Article Third:

A. I give and devise . . .

. . . .

C. All of my right, title, and interest in and to the real property (not chosen as a residence by Anders Meyer) located at [xxx xxx] Avenue, #3D or #3C, Fort Lee, New Jersey, to my brother, ERNEST PIERRE MORENON, if he shall survive me, or if not, then in equal shares to my niece, ELIZABETH CLAIRE MORENON, and my nephew, WILL McPHERSON MORENON, who shall survive me. . . . .

D. If ANDERS MEYER, shall survive me, he shall have the right to choose and reside in the real property at [xxx xxx] Avenue, #3C or #3D, Fort Lee, New Jersey, (hereinafter referred to as the "Real Property"), which shall be personal to him. ANDERS MEYER shall be responsible for the expenses relative to the maintenance of the Real Property, including but not limited to the payment of any maintenance fees or real estate taxes due on the Real Property. Upon the death of ANDERS MEYER, or if ANDERS MEYER fails to maintain the Real Property, or abandons the Real Property for a continuous periods of six (6) months or more, any rights conferred under this Paragraph . . . shall cease and the apartment shall be sold by my Executor and the net proceeds shall be added to the trust under Article FOURTH, to be distributed in accordance with its terms.

A-0098-24

Meyer conceded he did not attend any meeting between Morenon and Knee and Morenon never discussed the Will or its terms with him. The first time Meyer saw the Will was after Morenon's death.

Morenon died on April 19, 2023. Knee filed an application with the Bergen County Surrogate's Court to probate the Will and be appointed executor of Morenon's estate. On May 24, 2023, the Will was admitted to probate, Knee was qualified as executor, and the court issued her letters testamentary.

On July 18, 2023, Meyer filed a verified complaint in the Chancery Division. He alleged a conflict of interest disqualified Knee from serving as executor because she was scrivener of the Will. In addition, Meyer alleged Article Third is ambiguous and must be interpreted to bequeath title to both Apartments #3C and #3D to him. Meyer sought an order: (1) removing Knee as executor; (2) appointing him as administrator of the estate; (3) bequeathing to him title to both Apartments #3C and #3D; (4) compelling an accounting and the transfer of all estate assets to Meyer's control; and (5) other relief.

On September 6, 2023, the court denied Meyer's interim request to remove Knee as executor of the estate.

Knee subsequently filed an answer denying a conflict of interest prevented her from serving as executor. She also filed a counterclaim seeking instructions

6

from the court interpreting Article Third of the Will to give Meyer the option of living in either Apartment #3C or #3D, subject to the conditions in the Will and without obtaining title or a life estate in either. She also asked the court to set a deadline for Meyer to decide if he wants to occupy one of the apartments and, if so, identifying which one.

On August 14, 2024, Knee moved pursuant to Rule 1:10-3 in aid of litigant's rights to enforce a June 27, 2024 order directing Meyer to give Knee mail addressed to Morenon in his possession and to identify assets he received from Morenon outside the estate.

After completing discovery, the parties cross-moved for summary judgment. On August 23, 2024, the court issued an oral decision in which it found no genuine issues of material fact precluded entry of summary judgment. The court concluded there was no support for Meyer's argument Knee could not serve as executor of Morenon's estate because she wrote the Will. To the contrary, the court found it was routine practice for attorneys to draft testamentary documents in which they are named as executor.

In addition, the court found no grounds on which to remove Knee as executor. The court concluded none of the bases for removal of an executor set forth in N.J.S.A. 3B:14-21 were present.

A-0098-24

With respect to the meaning of Article Third of the Will, the court found that while Meyer was not "just making . . . up" his argument Morenon intended to bequeath him title to both apartments, "it comes pretty close to that." The court reasoned:

> If somebody is titling and giving a beneficiary an asset, why would it say that if you abandon it or you don't pay the expenses, that you lose the right to stay there, or that it then gets sold or whatever.
>
> That is not how it works. If somebody leaves in a will somebody a house, or a co-op, or a unit, and it becomes theirs, if they don't pay, they get foreclosed on.
>
> So just that alone which is never addressed, indicates that that is not what she did.

In addition, the court found Article Third

> says real property not chosen as a residence by Anders Meyers located at [xxx xxx] Avenue 3D, or 3C, Fort Lee.
>
> So[,] the one not chosen as a residence, then to my brother . . . if he shall survive me. . . . .
>
> So they are getting title to the one that he doesn't choose as his residence. I think we can all read. That is what it says.
>
> . . . .
>
> Now, [Paragraph] D says, if [Meyer] shall survive me, he shall have the right to choose, just like

8

it says above, and to reside – which means to live if you want to get into the dictionary – in the real property located at [xxx xxx] Avenue 3C or 3D – not both, one or the other – which shall be personal to him.

. . . .

It says, upon the death of . . . Meyer, or if . . . Meyer fails to maintain the real property, or abandons the real property for a continuous period of six months or more, any rights conferred under this Paragraph D of Article Third shall cease and the apartment shall be sold by my executor and the net proceeds will go to the trust.

Now, what is it that we don't understand about that? It is almost insulting to the [c]ourt.

. . . .

[I]f he owns it, why would that be in there? It would be his. He could sell it the next day. He could do whatever he wants. If he doesn't pay, the co-op would foreclose on him.

The court continued:

[I]t was not deeded over to him, and there is no explanation that you could possibly make that would say that . . . when you read that.

. . . .

. . . It is clear on its face. There is no ambiguity whatsoever.

On August 26, 2024, the court entered an order: (1) denying Meyer's motion for summary judgment and dismissing his complaint with prejudice; (2)

A-0098-24

granting Knee's cross-motion for summary judgment on her counterclaim; (3) interpreting Article Third of the Will to give Meyer the option of residing in either Apartment #3C or #3D, subject to the conditions in the Will; and (4) directing Meyer submit a written election of which of the two apartments he wished to occupy within twenty days.

Also on August 26, 2024, the court adjourned Knee's motion in aid of litigant's rights and encouraged Meyer to comply with the June 27, 2024 order prior to the court's consideration of that motion.

On September 11, 2024, plaintiff filed a notice of appeal from the August 26, 2024 order.

Also on September 11, 2024, Meyer moved in the trial court for a stay of the August 26, 2024 order pending appeal. On September 13, 2024, Knee cross-moved for an award of attorney's fees and costs and for sanctions against Meyer and his counsel pursuant to Rule 1:4-8. Knee's motion in aid of litigant's rights also was pending.[1]

---

[1] Generally, the filing of a notice of appeal divests the trial court of jurisdiction over the matter. R. 2:9-1(a). While the trial court had continuing jurisdiction to consider a motion for a stay pending appeal, R. 2:9-1(a)(3), and to enforce its June 27, 2024 order, R. 2:9-1(a)(7), it lacked jurisdiction to consider Knee's motion for attorney's fees and costs in the absence of a remand from this court.

A-0098-24

On September 27, 2024, the court issued an oral decision on the pending motions. With respect to the stay, the court found Meyer had not demonstrated a likelihood of success on appeal. In addition, the court found Meyer did not establish he would suffer irreparable harm in the absence of a stay because he could be compensated with damages if he successfully established he was entitled to ownership of the apartment not selected as his residence. The court also found Meyer's continued lack of cooperation with Knee was harming other beneficiaries under the Will. Thus, the court denied Meyer's motion for a stay.

The court denied Knee's motion for sanctions based on the claims Meyer raised in his complaint. Recognizing Meyer's long relationship with Morenon and his apparent belief in the validity of his arguments, despite the absence of legal support, the court found imposition of sanctions was not warranted.

With respect to Knee's motion to enforce litigant's rights, the court found Meyer "has been anything but cooperative" and deliberately failed to comply with the June 27, 2024 order without any substantive basis to do so. Thus, the court sanctioned Meyer $4,009.50, the amount of attorney's fees and costs Knee incurred to move to enforce the order.

Finally, the court granted Knee's counsel's fee application, to which no opposition was filed. The court reviewed the detailed time entries submitted in

11

support of the application. After applying the factors established in Rule 4:42-9(b), RPC 1.5(a), and Rendine v. Pantzer, 141 N.J. 292, 317 (1995), the court determined $124,701.13 in fees and costs was reasonable and justified.

On September 27, 2024, the court entered separate orders: (1) denying Meyer's motion for stay; (2) awarding Knee's counsel $124,701.13 in fees and costs; and (3) enforcing its June 27, 2024 order and sanctioning Meyer $4,009.50.

On January 21, 2025, we denied Meyer's motion for a stay pending appeal.

On April 8, 2025, we granted Meyer's motion to amend his notice of appeal to include the September 27, 2024 orders awarding attorney's fees and costs and imposing sanctions for failure to comply with the June 27, 2024 order.[2]

Meyer argues the trial court erred because: (1) Knee may not be named executor in a will she drafted; (2) Knee had a duty as executor to advance Meyer's interpretation of Article Third of the Will and to act in Meyer's best interests; (3) Article Third is ambiguous and should have been interpreted as bequeathing title to both Apartments #3C and #3D to Meyer; (4) the September

---

[2] Our April 8, 2025 order refers to a single order dated September 26, 2024. As explained above, the trial court awarded attorney's fees and costs and imposed sanctions in separate orders entered on September 27, 2024. We view our April 8, 2025 order to cure the jurisdictional defect in the trial court's award of attorney's fees and costs and to encompass both September 27, 2024 orders.

27, 2024 order enforcing the June 27, 2024 order should be vacated to the extent it compels Meyer to report assets he received from Morenon outside the estate and sanctions him; (5) the attorney's fees and costs awarded to Knee are excessive and invalid because she did not perform work benefitting the estate; and (6) it lacked jurisdiction to enter the September 27, 2024 sanctions order.

II.

We review a grant of summary judgment de novo, applying the same standard as the trial court.  Samolyk v. Berthe, 251 N.J. 73, 78 (2022).  That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'"  Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  We do not defer to the trial court's legal

analysis or statutory interpretation. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

A.    Recusal of Knee as Executor.

A trial court's decision regarding the removal of a fiduciary is reviewed for abuse of discretion. Wolosoff v. CSI Liquidating Tr., 205 N.J. Super. 349, 360 (App. Div. 1985). An executor may be removed if he or she failed to follow certain court orders, N.J.S.A. 3B:14-21(a) and (b), "[e]mbezzles, wastes, or misapplies any part of the estate for which the fiduciary is responsible, or abuses the trust and confidence reposed in" her, N.J.S.A. 3B:14-21(c), no longer resides or has an office in the State and neglects to proceed with the administration of the estate, N.J.S.A. 3B:14-21(d), is incapacitated, N.J.S.A. 3B:14-21(e); or neglects to perform her required duties, N.J.S.A. 3B:14-21(f).

The power of removal "should be granted only sparingly." Wolosoff, 205 N.J. Super. at 360. "Where a decedent has chosen and designated persons to act as fiduciaries respecting [her] estate, this court acts with reluctance to remove them from office." Connelly v. Weisfeld, 142 N.J. Eq. 406, 411 (E. & A. 1948). In those circumstances, courts generally will not remove an executor "without clear and definite proof of fraud, gross carelessness or indifference." In re Est. of Hazeltine, 119 N.J. Eq. 308, 314 (Prerog. Ct. 1936).

A-0098-24

A disagreement between a beneficiary and a fiduciary is not cause for removal. "[T]he mere fact that a beneficiary . . . is resentful of the fiduciary's authority, or is antagonized by his personality" is insufficient for removal. In re Koretzky, 8 N.J. 506, 531 (1951). To justify removal, "there must be a demonstration that the relationship will interfere materially with the administration of the trust or is likely to do so." Wolosoff, 205 N.J. Super. at 360-61.

We have reviewed the record and find no support for Meyer's argument the trial court erred when it denied his motion to remove Knee as executor of Morenon's estate. Meyer produced no evidence Knee met any statutory criteria for removal. To the contrary, Knee has endeavored to carry out the unambiguous directives in Morenon's Will. Meyer, however, has obstructed the execution of Knee's fiduciary obligations because of his apparent dissatisfaction with Morenon's decision not to bequeath the two Fort Lee apartments to him. Meyer refused to elect which of the apartments would serve as his residence, repeatedly defied a court order to give Knee mail addressed to Morenon that was in his possession, and refused to report non-probate assets he received from Morenon to permit Knee to file the tax returns necessary to finalize the estate.

15

Meyer cites no controlling authority for the proposition Knee is ethically prohibited from being named executor in a will she wrote. Nor is there any legal support for Meyer's argument Knee is ethically obligated to interpret Article Third of the Will in the manner favored by Meyer, which is contrary to the plain language of the Article, and at odds with the instructions Morenon gave Knee when drafting the Will.

B.    The Court's Interpretation of Morenon's Will.

According to N.J.S.A. 3B:3-33.1(a),

> [t]he intention of a testator as expressed in his will controls the legal effect of his dispositions, and the rules of construction expressed in N.J.S.[A.] 3B:3-34 through N.J.S.[A.] 3B:3-48 shall apply unless the probable intention of the testator, as indicated by the will and relevant circumstances, is contrary.

"The court's primary goal in interpreting a [will] is to fulfill the [testator's] intent[,]" In re Tr. of Nelson, 454 N.J. Super. 151, 158 (App. Div. 2018), and a "preponderance-of-the-evidence standard of proof applies to interpretation." Id. at 160. "[T]he goal always is the ascertainment of the testator's intent and it is not to be thwarted by unduly stressing 'the literal meaning' of his words." Id. at 158 (alteration in original) (quoting Fidelity Union Trs. Co. v. Robert, 36 N.J. 561, 565 (1962)). Notably, "in ascertaining intent," the "focus" is "really" on the testator's "'probable intent' because 'it is impossible to determine with

16

absolute certainty [the testator's] actual subjective intent.'" Ibid. (alteration in original) (quoting Morristown Tr. Co. v. McCann, 19 N.J. 568, 572 (1955)).

"In essence, the doctrine of probable intent is a rule of construction or interpretation[,]" In re Est. of Flood, 417 N.J. Super. 378, 382 (App. Div. 2010), and "represents . . . a 'broader and more liberal approach to will construction' than the prior insistence on formalistic results." Id. at 381 (quoting In re Est. of Burke, 48 N.J. 50, 63 (1966)). While the doctrine "does not permit a court to 'conjure up an interpretation or derive a missing testamentary provision out of whole cloth[,]" Nelson, 454 N.J. Super. at 158 (quoting Engle v. Siegel, 74 N.J. 287, 291 (1977)), it "may, on the basis of the entire will, competent extrinsic evidence and common human impulses strive reasonably to ascertain and carry out what the testator probably intended[.]" Id. at 159 (quoting Burke, 48 N.J. at 64).

We agree with the trial court's conclusion Article Third unequivocally gives Meyer the option of residing in either Apartment #3C or #3D during his lifetime, provided he pays the fees and taxes on the unit and does not abandon the apartment for six or more continuous months. Meyer's tortured reading of Article Third as bequeathing title to both apartments to him is unconvincing. Nothing in Article Third suggests Morenon intended Meyer to inherit title to the

17

apartments. The plain language of Article Third, which is susceptible to only one interpretation, dictates otherwise.

Notably, the conditions in Article Third that Meyer will lose the right to reside in the apartment he selected if he fails to pay the fees and taxes on the unit or abandons the unit for six or more continuous months does not square with an intent to bequeath title to the apartments to Meyer. Nor does the directive that, upon Meyer's death, the apartment in which he resided is to be sold with the proceeds deposited in the trust. If Morenon intended to bequeath the apartments to Meyer, she would have no control over the consequences of Meyer not meeting the financial obligations associated with the units or their disposition at his death. Meyer's argument Morenon was merely providing guidance on how Meyer should financially manage the apartments after he takes title is absurd.

The unambiguous language of Article Third comports with instructions Morenon gave Knee prior to the drafting of the Will. Those instructions were established in Knee's contemporaneous notes. Meyer's claim Morenon told him she intended to bequeath title to both apartments to him is supported by nothing

A-0098-24

other than his self-serving statement and is contradicted by the plain language of Article Third of the Will.[3]

C. The Sanctions Award.

We review the judge's decision on a motion for frivolous claims sanctions under an abuse-of-discretion standard. McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 498 (App. Div. 2011). Reversal is warranted "only if [the decision] 'was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment.'" Ibid. (quoting Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005)). We discern no abuse of discretion here.

Rule 1:4-8 sanctions "are specifically designed to deter the filing or pursuit of frivolous litigation[.]" LoBiondo v. Schwartz, 199 N.J. 62, 98 (2009). A second purpose of the rule is to compensate the opposing party in defending against frivolous litigation. Toll Bros., Inc. v. Twp. of W. Windsor, 190 N.J.

---

[3] Meyer's argument his relationship with Morenon was the equivalent of a marriage entitling him to inherit title to the apartments is not supported by law. See Jiwungkul v. Dir., Div. of Tax., 30 N.J. Tax 70 (Tax 2016) (surviving partner of a same-sex couple in long-term committed relationship who elected not to enter a civil union as a matter of principle and failed to carry out their intention to marry before the death of the deceased partner was not entitled to be treated as a surviving spouse for purposes of estate tax), aff'd, 450 N.J. Super. 257 (App. Div.), certif. denied, 230 N.J. 614 (2017).

A-0098-24

61, 71 (2007). The rule provides for imposition of sanctions where a party filed a pleading or a motion with an "improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation[,]" Rule 1:4-8(a)(1), or asserted a claim or defense that lacks the legal or evidential support required by Rule 1:4-8(a)(2), (3) and (4). State v. Franklin Sav. Acc. No. 2067, 389 N.J. Super. 272, 281 (App. Div. 2006). "For purposes of imposing sanctions under Rule 1:4-8, an assertion is deemed 'frivolous' when 'no rational argument can be advanced in its support, or it is not supported by any credible evidence, or it is completely untenable.'" United Hearts, LLC v. Zahabian, 407 N.J. Super. 379, 389 (App. Div. 2009) (quoting First Atl. Fed. Credit Union v. Perez, 391 N.J. Super. 419, 432 (App. Div. 2007)).

The nature of litigation conduct warranting sanctions under Rule 1:4-8 has been strictly construed. Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 1:4-8 (2026). Accordingly, Rule 1:4-8 sanctions will not be imposed against an attorney who mistakenly files a claim in good faith. Horowitz v. Weishoff, 346 N.J. Super. 165, 166-67 (App. Div. 2001); see also First Atl. Fed. Credit Union, 391 N.J. Super. at 432 (holding that an objectively reasonable belief in the merits of a claim precludes an attorney fee award); K.D. v. Bozarth,

20

313 N.J. Super. 561, 574-75 (App. Div. 1998) (declining to award attorney's fees where there is no showing the attorney acted in bad faith).

Frivolous litigation sanctions must be in accord with the procedural requirements of Rule 1:4-8. Subsection (b)(1) of the rule requires a party seeking frivolous litigation sanctions to "file a separate motion [for the sanction] describing a specific conduct alleged to be a violation of the Rule." Toll Bros., 190 N.J. at 69. Prior to filing such a motion, the litigant seeking the sanction must "serve a written notice and demand on the attorney or pro se party, which must include a request that the allegedly frivolous paper [or pleading] be withdrawn." Ibid. This notice is generally referred to as a "safe harbor" notice. Ibid. The notice must "set[] forth 'with specificity' the basis for his or her belief that the pleading is frivolous. The notice must be sufficiently specific and detailed to provide an opportunity to 'withdraw the assertedly offending pleadings.'" Ferolito v. Park Hill Ass'n, 408 N.J. Super. 401, 408 (App. Div. 2009) (quoting Trocki Plastic Surgery Ctr. v. Bartkowski, 344 N.J. Super. 399, 406 (App. Div. 2001)). Further, the motion must be filed "no later than [twenty] days following the entry of final judgment." R. 1:4-8(b)(2). Strict compliance with each procedural requirement is "a prerequisite to recovery[,]" and failure to conform to the rule's procedural requirements will result in a denial of the

request for an attorney's fees sanction. Franklin Sav. Acc. No. 2067, 389 N.J. Super. at 281.

N.J.S.A. 2A:15-59.1(a)(1), which governs frivolous litigation sanctions against parties,[4] provides that:

> [a] party who prevails in a civil action, either as plaintiff or defendant, against any other party may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous.

A finding that the pleading is "frivolous" must be based upon a finding that:

> (1)   The complaint, counterclaim, cross-claim or defense was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury; or
>
> (2)   The nonprevailing party knew, or should have known, that the complaint, counterclaim, cross-claim or defense was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.
>
> [N.J.S.A. 2A:15-59.1(b)(1)-(2).]

---

[4] Frivolous litigation claims against parties governed by N.J.S.A. 2A:15-59.1 are affected by the procedural but not the substantive provisions of Rule 1:4-8 governing attorneys. Toll Bros., 190 N.J. at 69-73.

The frivolous litigation statute is interpreted restrictively. Debrango v. Summit Bancorp, 328 N.J. Super. 219, 226 (App. Div. 2000). Sanctions should be awarded only in exceptional cases. Fagas v. Scott, 251 N.J. Super. 169, 181 (Law Div. 1991).

"'[T]he burden of proving that the non-prevailing party acted in bad faith' is on the party who seeks fees and costs pursuant to N.J.S.A. 2A:15-59.1." Ferolito, 408 N.J. Super. at 408 (alteration in original) (quoting McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 559 (1993)). When a prevailing party's allegation is based on an assertion that the non-prevailing party's claim lacked "a reasonable basis in law or equity," and the non-prevailing party is represented by an attorney, "an award cannot be sustained if the '[non-prevailing party] did not act in bad faith in asserting' or pursuing the claim." Ibid. (quoting McKeown-Brand, 132 N.J. at 549). As we stated:

> The rationale for requiring proof of bad faith is that clients generally rely on their attorneys "to evaluate the basis in 'law or equity' of a claim or defenses," and "a client who relies in good faith on the advice of counsel cannot be found to have known that his or her claim or defense was baseless."
>
> [Ibid. (quoting McKeown-Brand, 132 N.J. at 557-58).]

Here, the trial court awarded approximately $4,000 in sanctions against Meyer for his continued failure to comply with the June 27, 2024 order. That

23

order required Meyer to give Knee mail addressed to Morenon in Meyer's possession and to report to Knee all assets he received from Morenon outside the estate. Meyer refused to comply with the order, apparently under the ill-founded belief he did not have to abide by a court order he thought was incorrect and inconsistent with his interpretation of the Will. It is well-settled a party must comply with a court order, regardless of his agreement with its substantive validity. Meyer's counsel offered no reasonable defense of his client's intentional and repeated refusal to comply with the June 27, 2024 order. Meyer's behavior appears to be nothing more than a continuing effort to obstruct administration of the estate and frustrate Morenon's intent to permit him to reside in only one of the Fort Lee apartments and to do so without obtaining title or a life estate. The record amply supports the award of sanctions against Meyer.

D.    The Award of Attorney's Fees and Costs.

Finally, we turn to the trial court's award of attorney's fees and costs to Knee. Meyer did not oppose the attorney's fee application in the trial court.

> It is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available "unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest."

A-0098-24

[Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)).]

While we are not persuaded by Meyer's argument he opposed Knee's fee application in the trial court, for the sake of completeness we consider the validity of the fee award. We reviewed the record and found no basis on which to disturb the trial court's decision awarding attorney's fees and costs to Knee.

To establish reasonableness, the moving party's attorney must submit an affidavit of services along with the motion, Rule 4:42-9(b), which shall include the following information:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;

(7)    the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8)    whether the fee is fixed or contingent.

[RPC 1.5(a).]

The affidavit of services must also include "a detailed statement of the time spent and services rendered by paraprofessionals, a summary of the paraprofessionals' qualifications, and the attorney's billing rate for paraprofessional services to clients generally[,]" and a statement as to how much the client had paid, and "what provision, if any, has been made for the payment of fees to the attorney in the future." R. 4:42-9(b) and (c).

Knee's counsel submitted detailed records of the time expended in this matter to effectuate Morenon's testamentary intent in the face of baseless arguments by Meyer he is entitled to inherit title to the two Fort Lee apartments. The court carefully reviewed those records and made findings sufficient to support the amount of fees and costs awarded.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

26